1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    YOUNG LOR,

11              Petitioner,                    No. CIV S-08-2985 GEB DAD P

12        vs.

13    TOM FELKER,

14              Respondent.              ORDER SETTING EVIDENTIARY HEARING

15    _____/

16              Petitioner is a state prisoner proceeding through counsel with a petition for a writ

17    of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18    entered against him on November 18, 2004 in the Sacramento County Superior Court on two

19    counts of attempted murder with personal use of a firearm.  He seeks federal habeas relief, in

20    part, on the grounds that: (1) he received ineffective assistance of trial counsel due to his

21    counsel's conflict of interest, and (2) the prosecutor violated his right to a fair trial by failing to

22    disclose exculpatory evidence to the defense.

23              The habeas petition pending before this court was filed on December 8, 2008.

24    Respondent filed an answer on February 9, 2009, and petitioner filed a traverse on May 6, 2009.

25    On May 11, 2009, petitioner filed a request for an evidentiary hearing on the above-described

26    claims of ineffective assistance of counsel and prosecutorial misconduct.  (Doc. No. 29.)

On July 27, 2010, this court appointed counsel for petitioner.  (Doc. No. 36.)  On October 12, 2010, after two status conferences, the court issued an order allowing petitioner to file a second motion for evidentiary hearing and/or discovery.  (Doc. No. 46.)  Pursuant to that order, petitioner filed a motion for discovery and an evidentiary hearing on October 29, 2010. (Doc. No. 47.)  On January 10, 2011, after a hearing, this court granted petitioner's motion, in part, and ordered a limited evidentiary hearing on petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel.  (Doc. No. 52.)  On March 31, 2011, respondent's motion for reconsideration of the January 10, 2011 order was denied by the assigned district judge. (Doc. No. 61.)

On April 4, 2011, the Supreme Court decided the case of Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388 (2011).  On April 7, 2011, this court issued an order advising the parties that, in light of the Pinholster decision, the court intended to sua sponte reconsider its January 10, 2011 order granting a limited evidentiary hearing in this case.  The court directed the parties to file briefing addressing the impact of the decision in Pinholster on petitioner's request for an evidentiary hearing.  (Doc. No. 62.)  Respondent filed a responsive brief on April 26, 2011.  (Doc. No. 64.)  Petitioner filed a responsive brief on April 27, 2011.  (Doc. No. 65.)[1]   For the reasons described below, the court concludes that an evidentiary hearing remains appropriate with respect to petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel.

I.  Factual Background Regarding Petitioner's Crime of Conviction

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal[2], the California Court of Appeal for the Third Appellate District provided

---

[1]   Petitioner filed two responsive briefs on his own behalf on April 25, 2011, and June 21, 2011.  (Doc. Nos. 63, 66.)

[2]   People v. Lor, No. C049133, 2007 WL 1874424 (Cal. App.3d Dist. June 29, 2007) (hereinafter Opinion).  See also "Exhibit" to petition filed December 8, 2008.

the following factual summary regarding petitioner's crime of conviction:

> Defendant Yong Lor appeals after a jury convicted him of two counts of attempted murder and found true gang and personal firearm use enhancements . . . .

> FACTS AND PROCEDURAL BACKGROUND

> Defendant is a member of a gang known as the Asian Family Gangsters (AFG), which is part of the Hmong Nation Society (HNS), a gang based in the northern area of Sacramento. A rival gang, the Masters of Destruction (MOD), and an associated gang calling itself the Young Mafia Society (YMS), consider the southern area of Sacramento to be their territory. During the summer of 2001, the rival gangs were at war, with at least a dozen shootings between them.

> On July 18, 2001, defendant, armed with a loaded weapon, drove into the Meadowview area of southern Sacramento. He accosted T.V., a 15-year-old boy who was a member of the YMS. T.V. had a loaded .32 caliber semiautomatic handgun in his pocket, and was carrying a pit bull puppy to show his friend who was waiting at the market of a nearby gas station. Using gang parlance, defendant asked T.V. about his gang membership. Not recognizing defendant, T.V. denied being a gang member, but asked defendant "where are you from." Defendant responded with the letter "H," which signified both his membership in the HNS and an aggressive intent, since he was confronting T.V. in MOD territory.

> T.V. ignored defendant's response and proceeded to the market, where he met Zang Her, also a MOD member, and Her's wife, Helen. Upon arriving, he put the puppy down, turned in defendant's direction, raised his arms in the air and said, "What's up?" The gesture and words were intended to force defendant either to return and fight T.V., or to leave.

> Upon seeing the gesture of engagement, defendant turned his car around and drove directly toward T.V. and his two companions. Defendant stuck his gun outside the driver's side window, stopped the car about 20 to 36 feet from T.V., and fired at least a dozen shots at T.V. and Her. Several shots were aimed at T.V.'s head. T.V. returned fire. After several rounds hit the side of defendant's car, defendant sped away.

> T.V. was shot in the hand and elbow. Her was shot in the buttocks. The puppy was also injured.

> Defendant's car was found later that night at an apartment complex in North Sacramento. It had three bullet holes in the driver's side door, which had been recently taped and painted. Defendant was arrested in Wisconsin several months later. The arresting officer

told defendant that he was being arrested on a California warrant
involving a homicide case.  Defendant asked, "Did the guy die?"

Defendant testified that he was the victim of an unprovoked
assault.  He explained that he was in the Meadowview area because
he had just finished taking his five-year-old stepdaughter to visit
his sister.  While stopped at an intersection, he heard his car's glass
shatter, and believed he was being attacked.  Shielding the child
from the assault, defendant returned fire with a gun he kept under
the front seat.  Then he stepped on the gas.  Defendant admitted he
used to be a member of HNS, but denied being an active member
on the day of the shootings.

II.  Legal Standards for Evidentiary Hearings

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997).  Title 28 U.S.C. § 2254(d)

sets forth the following standards for granting habeas corpus relief:

An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall
not be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of the
claim -

(1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

Prior to the enactment of AEDPA, the decision to grant an evidentiary hearing on

claims raised in a habeas petition was "generally left to the sound discretion of district courts."

Schriro v. Landrigan, 550 U.S. 465, 473 (2007).  AEDPA did not change that basic rule.  Id.

However, 28 U.S.C. § 2254(e)(2) does set forth certain limits on the holding of an evidentiary

hearing:

(e)(2) If the applicant has failed to develop the factual basis of a
claim in State court proceedings, the court shall not hold an
evidentiary hearing on the claim unless the applicant shows that-

(A) the claim relies on-

4

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). In determining whether to grant an evidentiary hearing, the federal court must apply the AEDPA deferential standards to legal and factual questions necessarily reached by the state courts. Landrigan, 550 U.S. at 474 ("[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.").

If the facts do not exist or are inadequate and a hearing might be appropriate, the court must determine whether the petitioner has "failed to develop the factual basis of a claim in State court." 28 U.S.C. § 2254(d); Landrigan, 550 U.S. at 474 n.1. See also Insyxiengmay, 403 F.3d at 669-70. A petitioner will only be charged with a "failure to develop" the facts if "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 437 (2000) ("comity is not served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was unable to develop his claim in state court despite diligent effort."). See also Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005) ("[A]n exception to this general rule exists if a petitioner exercised diligence in his efforts to develop the factual basis of his claims in state court proceedings."). The petitioner

5

1  must have "made a reasonable attempt, in light of the information available at the time, to

2  investigate and pursue claims in state court." <u>Williams</u>, 529 U.S. at 435. "Diligence will require

3  in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in the state court in

4  the manner prescribed by state law." <u>Id.</u> at 437.

5        Here, petitioner requested an evidentiary hearing in state court on both of the

6  claims upon which he now seeks an evidentiary hearing in this court. Specifically, on January

7  25, 2008, petitioner filed a petition for writ of habeas corpus in the California Superior Court, in

8  which he claimed, as he does in the instant petition, that he received ineffective assistance of trial

9  counsel due to his counsel's conflict of interest and that the prosecutor violated his right to a fair

10  trial by failing to disclose exculpatory evidence to the defense. (Resp't's Lod. Doc. 8, Pet.,

11  Grounds One and Three.) In his prayer for relief, petitioner requested "that a formal evidentiary

12  hearing be conducted so that the facts relevant to the claims can be ascertained in a reliable

13  manner." (<u>Id.</u> at 45.) The Superior Court denied that petition on the merits of petitioner's

14  claims, without holding an evidentiary hearing or addressing petitioner's request for such a

15  hearing. (<u>Id.</u> at "Page 1 of 6" to "Page 6 of 6.").

16        Petitioner next raised his claims of ineffective assistance of trial counsel and

17  prosecutorial misconduct in a petition for writ of habeas corpus filed in the California Court of

18  Appeal. (Resp't's Lod. Doc. 9, Grounds One and Three.) Therein, in his prayer for relief,

19  petitioner requested a "formal evidentiary hearing." (<u>Id.</u> at 48.) Moreover, attached to the

20  petition was a separate motion for an evidentiary hearing with respect to petitioner's claim of

21  prosecutorial misconduct. (<u>Id.</u>, "Motion for Evidentiary Hearing.") The state appellate court

22  summarily denied that petition without holding an evidentiary hearing or ruling on petitioner's

23  motion for a hearing. (<u>Id.</u> at consecutive p. 1.)

24        Finally, on May 21, 2008, petitioner raised his claims of ineffective assistance of

25  counsel and prosecutorial misconduct in a petition for writ of habeas corpus filed in the

26  California Supreme Court. (Resp't's Lod. Doc. 10, Grounds One and Three.) Therein, in his

1    prayer for relief, he requested an evidentiary hearing on all of his claims.  He also attached a

2    separate motion for evidentiary hearing on his claim of prosecutorial misconduct.  (Id. at p. 48

3    and attached "Motion for Evidentiary Hearing.")  Again, the California Supreme Court

4    summarily denied that petition without holding an evidentiary hearing or ruling on petitioner's

5    motion for such a hearing.  (Id.  at consecutive p. 1.)  In light of petitioner's numerous attempts

6    to obtain an evidentiary hearing on his claims in state court, it is clear that he has satisfied the

7    diligence requirement contained in 28 U.S.C. § 2254(d).

8            The next step in determining whether an evidentiary hearing is appropriate in this

9    federal habeas action is to consider whether the petitioner has shown a "colorable claim for relief

10   and has never been afforded a state or federal hearing on this claim."  Earp, 431 F.3d at 1167

11   (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir.

12   2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)).  To show that a claim is

13   "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to

14   relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation

15   omitted).  See also Landrigan, 550 U.S. at 474 ("In deciding whether to grant an evidentiary

16   hearing, a federal court must consider whether such a hearing could enable an applicant to prove

17   the petition's factual allegations, which, if true, would entitle he applicant to federal habeas

18   relief.").  Thus, a hearing is required if: "(1) [the petitioner] has alleged facts that, if proven,

19   would entitle him to habeas relief, and (2) he did not receive a full and fair opportunity to

20   develop those facts [.]"  Williams v. Woodford, 384 F.3d 567, 586 (9th Cir. 2004).  As described

21   below, petitioner has satisfied this requirement because the allegations set forth in the instant

22   habeas petition raise a colorable claim for relief.

23           In Pinholster, the Supreme Court held that federal review of habeas corpus claims

24   under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the

25   claim on the merits."  131 S. Ct. at 1398.  Therefore, evidence introduced at an evidentiary

26   hearing in federal court may not be used to determine whether a state court decision on the merits

7

1   of a petitioner's habeas claim violates § 2254(d)(1).  Id.  See also Stokley v. Ryan, 659 F.3d 802,

2   807 (9th Cir. 2011) ("when a petitioner seeks habeas relief under 28 U.S.C. § 2254(d)(1), federal

3   courts are restricted to the state court record when deciding claims previously adjudicated on the

4   merits by the state courts.").  Accordingly, an evidentiary hearing in federal court on a claim that

5   was adjudicated on the merits in state court is appropriate only if a petitioner can "overcome the

6   limitation of § 2254(d)(1) on the record that was before that state court."  131 S. Ct. at 1400.

7            In his concurring opinion in Pinholster, Justice Breyer explained the effect of the

8   majority's interpretation of § 2254(d) (1) as follows:

9            An offender who believes he is entitled to habeas relief must first
             present a claim (including his evidence) to the state courts.  If the
             state courts reject the claim, then a federal habeas court may review
10           that rejection on the basis of the materials considered by the state
             court.  If the federal habeas court finds that the state-court decision
11           fails (d)'s test (or if (d) does not apply), then an (e) hearing may be
             needed.
12

13  Id. at 1412 (Justice Breyer, concurring in part and dissenting in part).

14           In Pinholster the Supreme Court did not specifically address habeas review

15  pursuant to § 2254(d)(2).  However, courts that have done so in the aftermath of the decision in

16  Pinholster appear to be in agreement that evidence introduced in a federal evidentiary proceeding

17  is also irrelevant to § 2254(d)(2) review.  See Blue v. Thaler, 665 F.3d 647, 656 (5th Cir. 2011);

18  Rountree v. Balicki, 640 F.3d 530, 538 (3d. Cir.), cert. denied.  ___U.S.___, 132 S. Ct. 533

19  (2011); Coddington v. Cullen, No. CIV. S 01-1290 KJM GGH, 2011 WL 2118855 at *2 (E.D.

20  Cal. May 27, 2011); Reyes v. Ercole, No. 06 Civ. 5525(SHS), 2011 WL 1560800 at *2

21  (S.D.N.Y. Apr. 25, 2011) ("Pinholster restricts federal habeas review of claims adjudicated on

22  the merits in state court to the record that was before the state court, regardless of whether review

23  of those claims is sought in federal court pursuant to section 2254(d)(1) or (2)"); see also

24  Pinholster, 131 S. Ct. at 1400 n.7 (noting "[t]he additional clarity of § 2254(d)(2) on this point").

25  Therefore, following the decision in Pinholster, the holding of an evidentiary hearing in a federal

26  habeas proceeding would be futile unless the court has determined that the state court's

8

adjudication of the petitioner's claims was contrary to or an unreasonable application of clearly established federal law, and therefore not entitled to deference under § 2254(d)(1), or that the state court unreasonably determined the facts, and therefore deference is not warranted pursuant to § 2254(d)(2).[3]

Here, as set forth below, petitioner's claims regarding ineffective assistance of counsel and prosecutorial misconduct were, in large part, adjudicated on the merits by the Sacramento County Superior Court. Thus, pursuant to Pinholster, an evidentiary hearing on petitioner's claims in this federal court would be futile unless petitioner can overcome the limitations of §§ 2254(d)(1) or (d)(2) with respect to those claims on the record that was before the state court.

/////

----

[3] The Supreme Court in Pinholster observed:

> Because Pinholster has failed to demonstrate that the adjudication of his claim based on the state-court record resulted in a decision "contrary to" or "involv[ing] an unreasonable application" of federal law, a writ of habeas corpus "shall not be granted" and our analysis is at an end. 28 U.S.C. § 2254(d). We are barred from considering the evidence Pinholster submitted in the District Court that he contends additionally supports his claim. For that reason, we need not decide whether § 2254(e)(2) prohibited the District Court from holding the evidentiary hearing or whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied.

131 S. Ct. at 1411 n.20 (emphasis added). This language indicates that while the Pinholster decision limits the evidence that may be considered in adjudicating a federal habeas petition, it did not decide or even address when an evidentiary hearing is proper in a federal habeas proceeding, nor does it prohibit a federal court from holding an evidentiary hearing. Rather, the decision in Pinholster simply restricts the evidence that may be considered by a federal habeas court in determining whether the state court decision on the merits of a petitioner's claim violates the AEDPA standards. See Mickle v. Martel, No. C 92-2951 THE, 2011 WL 4891024 at *2 (N.D. Cal. Oct. 13, 2011) ("[t]he Supreme Court in Pinholster did not hold that a district court would err by conducting an evidentiary hearing before deciding that a claim survives review under Section 2254(d)."). The Supreme Court in Pinholster also explained that an evidentiary hearing may still be appropriate in order to allow the petitioner to prove his claims where the state court did not adjudicate those claims on the merits, or if it was determined that the state court's decision was unreasonable. 131 S. Ct. at 1400-01, 1412-13.

9

III.  Petitioner's Claims of Prosecutorial Misconduct and Ineffective Assistance of Counsel

    A.  Prosecutorial Misconduct: Brady Claim

        In one of his claims for habeas relief petitioner alleges that the prosecutor violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963) by failing to produce exculpatory evidence to the defense.  (Doc. No. 1 at 7.)[4]  As noted above, petitioner was charged with and convicted of attempted murder with use of a firearm.  Petitioner alleges that the victim, Andy Vang, was also arrested and charged with assault with a firearm in connection with this very incident, and may have been convicted of that crime.  (Id. at 7-8.)  Petitioner argues that the prosecutor should have provided this evidence to the defense and/or elicited the information from Andy Vang and Detective Kang, the prosecution's gang expert, when they testified at petitioner's trial.  (Id.)  Petitioner contends that this evidence was relevant to his self-defense theory presented at his trial and would have been valuable impeachment evidence against both Andy Vang and Detective Kang.  (Id. at 8-9.)  Petitioner notes that Det. Kang was called as a witness by the prosecution but was not asked about the assault charge filed against Vang.  (Id. at 8.)

        Petitioner argues that information that Andy Vang was arrested and charged with assault in connection with this incident "transcends being merely 'impeachment evidence' as it goes directly to the very heart of this case; who initiated the violence." (Id. at 7-8.)  He argues that the fact the prosecuting authorities had enough evidence to charge Vang with assault raises a significant question with regard to the identity of the aggressor in this case and, if it had been divulged, could have given rise to a reasonable doubt as to petitioner's guilt.  Put another way, petitioner argues that the prosecutor's failure to fully disclose the facts surrounding the assault charges brought against Andy Vang in connection with this same incident "adversely impacted" the presentation of his defense based upon self-defense because "had he been able to show that the alleged victim had been charged, arrested, possibly convicted of being the initiator of the

---

    [4]  This court will refer to page numbers of the parties' pleadings by using the automated numbers assigned by the court's electronic filing system.

1  violence there is substantially more than a mere probability of a different outcome." (Id. at 9.)

2  Petitioner also argues that evidence that Andy Vang was charged with assault in this case would

3  have "adversely affected" the credibility of prosecution witnesses Vang and Det. Kang, as well as

4  "the prosecution itself." (Id. at 8.)

5         Petitioner also claims that evidence regarding the charges brought against Vang,

6  including the evidence relied on to support those charges, was relevant to impeach the credibility

7  of Det. Kang, who "spent more time on the witness stand than anybody in Petitioner's case,

8  never mentioned that he had arrested Vang on the P.C. 245(a)(1) and never mentioned to the

9  court or jury that Vang had been charged with that offense." (Id. at 8.)  According to petitioner,

10  because this undisclosed evidence was relevant to impeach Det. Kang's credibility, it is irrelevant

11  whether Vang was actually convicted of the assault.  (Id.)

12         In support of these arguments, petitioner has filed with this court a copy of a

13  California Law Enforcement Tracking System (CLETS) database printout, also known as a "rap

14  sheet," pertaining to Andy Vang. (Id. at 85, 88.)  Although difficult to decipher, the first and

15  second pages of this document when read together appear to reflect that on September 21, 2001,

16  in case No. #01F06166, Vang was charged with (and eventually convicted of) illegal possession

17  of a concealed weapon and "assault with firearm on person." (Id.)  The first entry on the second

18  page reflects that on November 2, 2001, also in case No. #01F06166, Vang was convicted of

19  those same two charges. (Id. at 88.)  The third entry reflects that also on November 2, 2001,

20  again in case No. #01F06166, Vang was convicted of illegal possession of a concealed weapon,

21  but that the charge of "assault with firearm on person" was "dismissed." (Id.)  Finally, the rap

22  sheet indicates that on his felony conviction Vang was sentenced to 7 years probation upon the

23  condition that he serve 180 days in the county jail. (Id.)

24         It is not clear from the face of this CLETS printout whether the charge brought

25  against Vang of assault with a firearm on a person was eventually dismissed before petitioner's

26  trial commenced, or whether Vang was ultimately convicted of that offense. (Id.)  Petitioner

11

1   argues that the charge against Vang resulted in a "probable conviction." (Id. at 4.) He asks:

2           Was that conviction expunged per court diversion or probation?
        Was there a deal of some sort?  Did the alleged victim, Andy

3

4           Vang, have a jury trial on those charges, or did he plead guilty to
        them?

5   (Id. at 20.) Petitioner argues that, regardless of whether Vang was actually convicted of the

6   assault charge, the fact the prosecution withheld the information that Vang was charged with

7   assault in connection with the incident over which petitioner was convicted constitutes a Brady

8   violation. As described above, he contends that evidence Vang was charged with this offense,

9   standing alone, was valuable impeachment evidence against both Vang and Detective Kang. (Id.

10  at 8.)

11          The state court record reflects that the following colloquy occurred during the trial

12  testimony of Officer Kang:

13          Q. [by the prosecutor]: Was he – let me – July to August 3rd.  You
        spoke to Andy [Vang] again, August 3d, 01.  Do you remember

14          that?

15          A.  Yes.

16          Q.  You went to his house with several officers, do you remember
        that?

17

18          A.  Yes.

19          Q.  Okay.  That's when you arrested Andy for possessing that gun
        back on on [sic] the 18th; right?

20          A.  Right.  Yeah.  I mean he – he's a gang member, he had the
        crime of having a loaded firearm on him.  Yes.

21

22  (Reporter's Transcript on Appeal (RT) at 486-87.)  Petitioner argues that the prosecutor

23  deliberately limited his questioning of Officer Kang to whether Andy Vang was arrested for

24  possession of a gun, and withheld the damaging evidence that he was also arrested for assaulting

25  petitioner with that firearm.  (Traverse at 7.)  He contends that this exchange "adversely impacted

26  upon the credibility of the entire prosecution" because it demonstrates both the prosecutor's

attempt to hide evidence and the ambiguity that surrounded the question of who was the

instigator of the violence in this case.  (Id. at 8.)

During Andy Vang's testimony at petitioner's trial, the following exchange

occurred:

> Q. [by the prosecutor]:  On August 3rd of 2001 were you arrested
> for possessing a concealed firearm as a minor?
>
> A.  Yes.
>
> Q.  Were you prosecuted for that?
>
> A.  Yes.
>
> Q.  Over a year later you picked up a new case, correct?
>
> A.  Yes.
>
> Q.  Were you convicted of that case?
>
> A.  Yes.
>
> Q.  Was that a shooting in a park?
>
> A.  Yes.
>
> Q.  And you were convicted of shooting in an occupied house?
>
> A.  No.
>
> Q.  Do you recall being convicted of 246 of the Penal Code which
> is commonly referred to as shooting at an occupied house?
>
> A.  Well, they told me it was discharge of firearm in a dwelling
> inhabit [sic].

(RT at 154.)

Petitioner argues that, during this questioning, the prosecutor again withheld the

truth by "specifically narrow[ing] the arrest down to the gun charge," instead of revealing that

Andy Vant was also arrested and charged with assault with a firearm in connection with this

case.  (Traverse at 8.)  Petitioner asks:

/////

> Should Petitioner have been permitted a fair opportunity to
> impeach the witnesses, Andy Vang and Detective Kang?  Was he
> afforded that right given that the State suppressed the evidence of
> Vang's prosecution for ASSAULT WITH FIREARM ON
> PERSON directly related to this case?  If the prosecution itself had
> "reasonable doubt" about who initiated the gunfire – as is
> irrefutably proven by its charging of Vang for ASSAULT WITH
> FIREARM ON PERSON – weren't the trial court, jury, and
> defendant entitled to know that?

(Id.)  Petitioner contends that the state "had to have evidence to support the charge it lodged

against Vang for the assault with a firearm," or "the charge would not have been filed."  (Id. at

10.)

In sum, petitioner claims that the prosecutor violated the dictates of Brady in

failing to disclose evidence of the actual charges brought against Andy Vang in connection with

the incident for which petitioner stood trial.  He argues that this evidence would have been

material to his defense that he was not the aggressor but rather the victim, would have

undermined the prosecution theory that Vang was not the aggressor, and also would have

impacted the credibility of witnesses Vang and Det. Kang.  Petitioner states that he was unaware

of the charges brought against Vang until after his trial was over.  (Doc. Nos 1 at 8; 63 at 3.)

As set forth above, petitioner raised his Brady claim in a petition for writ of

habeas corpus filed in the Sacramento County Superior Court.[5]  There, he claimed that the

prosecutor violated his constitutional rights by failing to turn over to the defense exculpatory

material regarding the charges brought against Vang in connection with this case, including the

disposition of those charges.  (Resp't's Lod. Doc. 8, Pet. for Writ of Habeas Corpus at 34-40.)

The Superior Court rejected petitioner's arguments, reasoning as follows:

/////

/////

---

[5]  Because the California Court of Appeal and California Supreme Court summarily denied
habeas relief on petitioner's claim of prosecutorial misconduct, this court will analyze the Superior
Court's decision as the relevant state-court determination under AEDPA.  Robinson v. Ignacio, 360
F.3d 1044, 1055 (9th Cir. 2004).

THE BRADY CLAIM IS WITHOUT MERIT

> A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case entitled him to relief. (In re Bower (1985) 38 Cal.3d 865, 872.) A petition for writ of habeas corpus should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. (People v. Duvall (1995) 9 Cal.4th 464, 474.) The prosecution has the duty to disclose any material exculpatory evidence to the defense. (Pen. Code, § 1054.1(e); Brady v. Maryland (1963) 373 U.S. 83.)
>
> Petitioner claims that the prosecutor failed to disclose evidence that the victim in Petitioner's case, Andy Vang, was convicted of assault with a deadly weapon in violation of Penal Code section 245(a)(1). He attaches as "proof" a copy of Vang's CLETS rap sheet showing that Vang was "convicted." A person's rap sheet is not evidence. It is inadmissible hearsay. (See Evid. Code § 1200.) Although Vang was arrested for a violation of Penal Code section 245(a)(1) and was charged with that offense, the charge was dismissed. Therefore, Petitioner has not shown that there was any material exculpatory evidence that the prosecutor failed to disclose.

(Id., Superior Court decision at "Page 2 of 6.") In other words, it appears that the Superior Court concluded that evidence Vang was charged with assault in connection with the incident for which petitioner was convicted was not "material" under Brady because the charge against Vang was ultimately dismissed.

Petitioner argues that the Superior Court's conclusion that the assault charges against Vang were dismissed is not necessarily consistent with the facts placed before that court, since Vang's rap sheet also reflected that he was "convicted" of the assault charge. (Doc. No. 1 at 8.) Petitioner alleges that whether the assault charge was ultimately dismissed is "an issue still in dispute" because it is not clear which of the entries on Vang's rap sheet is accurate. (Id.) Petitioner interprets the rap sheet as showing that Vang was convicted of assault with a firearm in connection with this case. (Traverse at 5.) He argues that the Superior Court's conclusion to the contrary is based on an unreasonable determination of the facts because there is no evidence in the record to support that conclusion. (Id. at 5-6.) Petitioner also points out that, while the Superior Court stated the CLETS printout was "not evidence," that court also relied on that printout as establishing that the assault charge against Vang was dismissed. (Id.)

15

1    The U.S. Supreme Court has held "that the suppression by the prosecution of

2    evidence favorable to an accused upon request violates due process where the evidence is

3    material either to guilt or to punishment, irrespective of the good faith or bad faith of the

4    prosecution." Brady, 373 U.S. at 87.  See also Youngblood v. West Virginia, 547 U.S. 867, 869

5    (2006) ("A Brady violation occurs when the government fails to disclose evidence materially

6    favorable to the accused").  The "central premise" of the Brady decision is that "even though an

7    individual prosecutor may win a conviction, society as a whole loses when that conviction is

8    wrong." Gonzalez v. Wong, 667 F.3d 965, 981 (9th Cir. 2011).  The duty to disclose favorable

9    evidence is applicable even though there has been no request by the accused, United States v.

10   Agurs, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as exculpatory

11   evidence.  United States v. Bagley, 473 U.S. 667, 676 (1985); Gonzalez, 667 F.3d at 981.  There

12   are three components of a Brady violation: "[t]he evidence at issue must be favorable to the

13   accused, either because it is exculpatory, or because it is impeaching; the evidence must have

14   been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

15   Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  See also Skinner v. Switzer, ___ U.S. ___, 131

16   S. Ct. 1289, 1300 (2011); Banks v. Dretke, 540 U.S. 668, 691 (2004); Maxwell v. Roe, 628 F.3d

17   486, 509 (9th Cir. 2010).  In order to establish prejudice, petitioner must demonstrate that "'there

18   is a reasonable probability' that the result of the trial would have been different if the suppressed

19   documents had been disclosed to the defense."  Strickler, 527 U.S. at 289.  "The question is not

20   whether petitioner would more likely than not have received a different verdict with the

21   evidence, but whether "in its absence he received a fair trial, understood as a trial resulting in a

22   verdict worthy of confidence." Id. (quoting Kyles v. Whitley, 514 U.S. 419, 434  (1995)).  See

23   also Hein v. Sullivan, 601 F.3d 897, 906 (9th Cir. 2010); Silva v. Brown, 416 F.3d 980, 986 (9th

24   Cir. 2005) ("a Brady violation is established where there 'the favorable evidence could

25   reasonably be taken to put the whole case in such a different light as to undermine confidence in

26   the verdict'")

1    Information that is required to be disclosed under Brady "includes "material . . .

2   that bears on the credibility of a significant witness in the case." United States v. Brumel-

3   Alvarez, 991 F.2d 1452, 1461 (9th Cir. 1992) (quoting United States v. Strifler, 851 F.2d 1197,

4   1201 (9th Cir. 1988)).  See also Killian v. Poole, 282 F.3d 1204, 1210 (9th Cir. 2002) (habeas

5   relief granted where undisclosed letters would have been valuable to the defense in impeaching

6   "make-or-break" witness' credibility before the jury); Singh v. Prunty, 142 F.3d 1157, 1161-63

7   (9th Cir. 1998) (petitioner was entitled to habeas relief where the prosecution suppressed

8   evidence of agreement to provide benefits to a key witness in exchange for his testimony, and a

9   reasonable probability existed that had evidence been disclosed, one or more members of jury

10  would have viewed the witness's testimony differently).  In determining whether the suppression

11  of impeachment evidence is sufficiently prejudicial to rise to the level of a Brady violation, a

12  reviewing court must analyze the totality of the undisclosed evidence "in the context of the entire

13  record," Agurs, 427 U.S. at 112, because "[t]he cumulative effect of all the undisclosed evidence

14  may violate due process and warrant habeas relief under AEDPA."  Maxwell, 628 F.3d at 512

15  (citing Barker v. Fleming, 423 F.3d 1085, 1094 (9th Cir. 2005)).  "Whether the suppressed

16  evidence was material must be considered collectively, not item by item."  Id. at 509.  Once the

17  materiality of the suppressed evidence is established, no further harmless error analysis is

18  required.  Kyles, 514 U.S. at 435-36; Silva, 416 F.3d at 986.

19    In rejecting petitioner's Brady claim, the Sacramento County Superior Court made

20  a factual determination, based upon Andy Vang's "rap sheet," that Vang had been charged with

21  assault with a deadly weapon in connection with the incident for which petitioner had been

22  convicted, but that the charge against Vang had been dismissed.  The Superior Court further

23  concluded that because the charge was dismissed, any evidence of the charge withheld from the

24  defense by the prosecutor was not "material" under Brady.  However, as petitioner argues, the

25  state court's conclusion that the assault charge against Vang was dismissed is based upon a

26  document (Vang's rap sheet) which appears to indicate both that Vang was convicted of the

17

assault charge and that the charge was dismissed.  Without conducting an evidentiary hearing to determine which rap sheet entry was accurate and the true nature of Vang's conviction, the Superior Court made a factual determination based upon unexplained, conflicting rap sheet entries.

Ordinarily, the state court's factual findings would be entitled to a presumption of correctness under AEDPA.  28 U.S.C. § 2254(e)(1).  However, such deference is only warranted if the state court's fact-finding process survives the dictates of § 2254(d)(2).  In other words, the state court decision must not be "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d)(2).  See also Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("deference does not imply abandonment or abdication of judicial review.")  As the Ninth Circuit has recently reaffirmed, a state court determination of factual issues not supported by the record, without an evidentiary hearing on those issues, is per se unreasonable.  Hurles v. Ryan, 650 F.3d 1301, 1312 (9th Cir. 2011) ("We have repeatedly held that where a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, 'the fact-finding process itself is deficient' and not entitled to deference [under AEDPA].").  See also Perez v. Rosario, 459 F.3d 943, 950 (9th Cir. 2006) ("In many circumstances, a state court's determination of the facts without an evidentiary hearing creates a presumption of unreasonableness."); Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004) ("[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable."); Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003) ("[W]ith the state court having refused [petitioner] an evidentiary hearing, we need not of course defer to the state court's factual findings—if that is indeed how those stated findings should be characterized—when they were made without such a hearing."); Williams v. Woodford, No. 2:05-cv-00980-AK, 2012 WL 929666 (E.D. Cal. Mar. 19, 2012) ("Under this circuit's precedent,

1   '[i]f . . . a state court makes evidentiary findings without holding a hearing and giving petitioner

2   an opportunity to present evidence, such findings clearly result in an 'unreasonable

3   determination' of the facts.'").

4           Here, the Sacramento County Superior Court made a factual finding based on a

5   law enforcement printout which that court concluded was "inadmissible hearsay" and therefore

6   "not evidence," but which the court nonetheless relied upon to support its factual finding that

7   Vang had been charged with assault with a deadly weapon but that "the charge was dismissed."

8   (Resp't's Lod. Doc. No. 8, at "Page 2 of 6.").  Although the Superior Court did not necessarily

9   misstate the record, it clearly relied only on a portion of the document to support its factual

10  conclusion and disregarded entries that did not support its conclusion.  Under these

11  circumstances, and based on the authorities cited above, it was unreasonable for the Sacramento

12  County Superior Court to find, based solely on the rap sheet, that the assault charge against Vang

13  had been dismissed.  Additional evidence was required in order to make that factual

14  determination.  In short, petitioner's <u>Brady</u> claim cannot be resolved by reference to the state

15  court record because that record is inconclusive with respect to a critical fact necessary to resolve

16  that claim.

17          Accordingly, the Superior Court's decision was based on an unreasonable

18  determination of the facts and is not entitled to deference.  <u>See</u> <u>Winston v.  Kelly</u>, 592 F.3d 535,

19  555-56 (4th Cir.  2010) ("[i]f the record ultimately proves to be incomplete, deference to the state

20  court's judgment would be inappropriate because judgment on a materially incomplete record is

21  not an adjudication on the merits for purposes of § 2254(d).").  Because petitioner has overcome

22  the limitation of § 2254(d)(2) on the record that was before the state court, this federal habeas

23  court is not prevented from taking evidence with respect to petitioner's <u>Brady</u> claim.  <u>See</u>

24  <u>Pinholster</u>, 131 S. Ct. at 1400 (If a claim has been adjudicated on the merits by a state court, a

25  federal habeas petitioner must overcome the limitation of § 2254(d) on the record that was before

26  the state court in order to be entitled to an evidentiary hearing); <u>see also</u> <u>Detrich v. Ryan</u>, ___ F.3d

1   ___, 2012 WL 1526132, at *20 (9th Cir. May 2, 2012) (Under the decision in <u>Pinholster</u>,

2   "section 2254(e)(2) is to be interpreted in a way that does not preclude a state prisoner who was

3   diligent in state habeas court and who can satisfy § 2254(d) from receiving an evidentiary

4   hearing."); <u>Williams</u>, 2012 WL 929666, at *6.

5            As described above, petitioner also argues in his petition before this court that the

6   prosecutor committed misconduct in failing to disclose to the defense that Vang had been

7   charged with assault with a deadly weapon in connection with this case, regardless of whether

8   Vang was ultimately convicted of that charge.  Petitioner argues that if made aware that the

9   prosecuting authorities were not certain which of the two men was the aggressor in the incident,

10  the jury may have had a reasonable doubt whether Vang's version of the events was true.

11  Petitioner contends that this information would have adversely impacted the credibility of both

12  Vang and Det. Kang and would have cast doubt on the prosecutor's decision to even charge

13  petitioner with the crime.  The Sacramento County Superior Court did not address this aspect of

14  petitioner's claim in its decision denying habeas relief.  Rather, that court construed petitioner's

15  claim as limited to whether the prosecutor committed misconduct by failing to disclose that Vang

16  had been <u>convicted</u> of assault with a firearm.  In this regard, the Superior Court's decision missed

17  the mark with respect to the scope of petitioner's claim in the petition filed with that court.

18  Petitioner argued that regardless of the ultimate outcome of the assault charge against Vang, the

19  mere fact that the prosecuting authorities had sufficient doubt regarding which was the aggressor

20  in this case to bring charges against both participants had significant impeachment value with

21  respect to the testimony of both Vang and Det. Kang.  Because this aspect of petitioner's claim

22  was not at all considered or addressed on its merits by the state court, <u>Pinholster</u> does not

23  preclude this federal habeas court from conducting an evidentiary hearing with respect to that

24  claim.  <u>See Robinson v. Howes</u>, 663 F.3d 819, 823 (6th Cir. 2011) ("if the claim was never

25  'adjudicated on the merits' in state court, the claim does not fall under 28 U.S.C. § 2254(d) and

26  <u>Pinholster</u> does not apply.").

1      An evidentiary hearing is also appropriate under the circumstances of this case

2   because petitioner has overcome the § 2254(d) bar and may, depending on the facts as properly

3   developed, be entitled to federal habeas relief.  Evidence that the assault charge against Vang was

4   dismissed could have provided valuable impeachment evidence with regard to the victim's

5   motivation for testifying against petitioner.  The Superior Court acknowledged that Vang was

6   charged with assault with a deadly weapon stemming from this incident.  That fact was

7   potentially important impeachment evidence at a trial where the credibility of Det. Kang and

8   Andy Vang was essential to the prosecution's case against petitioner.  Further, the state court's

9   conclusion that the prosecutor did not violate the dictates of Brady, simply because the charge

10  against Vang was eventually dismissed, is an unreasonable application of Brady.

11     All three components of a Brady violation may, depending on the true facts, be

12  present in this case.  First, evidence that victim Andy Vang was charged with assault with a

13  deadly weapon as a result of the very incident from which the charges against petitioner stemmed

14  is evidence favorable to the accused.  See United States v. Price, 566 F.3d 900, 907 (9th Cir.

15  2009) ("[E]vidence that would impeach a central prosecution witness is indisputably favorable to

16  the accused.").  Further, the suppression of this evidence was prejudicial because it deprived the

17  defense of powerful impeachment evidence in a case that essentially boiled down to a credibility

18  contest between petitioner and Vang.  See Kyles, 514 U.S. at 444 (finding that non-disclosed

19  evidence tending to undermine the reliability of key witness testimony was material); Price, 566

20  F.3d at 908 (a prosecutor's failure to disclose the criminal history of the prosecution's star

21  witness, including three arrests for theft, a report of theft by deception, and three convictions for

22  false-tag violations, violated the requirements of Brady); Horton v. Mayle  408 F.3d 570, 578

23  (9th Cir. 2005) (failure to disclose a leniency agreement between the prosecution and a witness

24  violated Brady because, among other things, the witness' testimony was "central to the

25  prosecution's case"); Benn v. Lambert  283 F.3d 1040, 1057-58 (9th Cir. 2002) (Brady violated

26  where prosecution failed to disclose that the prosecutor had arranged during trial to have key

21

1   prosecution witness released without being charged after being stopped for traffic offense and

2   detained on outstanding warrants and had arranged for dismissal of charges brought by a local

3   police department against the witness for burglary because the undisclosed benefits would have

4   impeached the witness more effectively than the disclosed evidence that he had been granted

5   immunity from arrest during trial); Silva, 416 F.3d at 986 (impeachment evidence is especially

6   likely to be "material," under Brady, when it impugns the testimony of witness who is critical to

7   prosecution's case); Hayes v. Brown, 399 F.3d 972, 987 (9th Cir. 2005) (a prosecutor's secret

8   agreement to drop felony charges against his star witness in a capital murder trial constituted a

9   Brady violation).  Here, evidence that Vang had been charged with assault in connection with

10  this case was material, exculpatory, and apparently known to the prosecution.  Finally, petitioner

11  claims that the defense was not provided with information about the assault charges brought

12  against Vang prior to petitioner's trial.  The withholding of such evidence would have deprived

13  petitioner of the opportunity to cross-examine Vang and Detective Kang on these significant

14  matters.

15          The facts before the state court made out a preliminary showing that the

16  prosecutor may have withheld significant impeaching evidence from the defense in violation of

17  Brady.  Under the circumstances of this case, where Vang's credibility was central to the

18  prosecution's case, the failure to disclose evidence that Vang had been charged with an assault on

19  petitioner may undermine confidence in the outcome  of petitioner's trial.  Accordingly,

20  petitioner is entitled to an evidentiary hearing with respect to his claim of prosecutorial

21  misconduct.[6]

22  _____

23          [6] An unresolved issue in this case is whether petitioner's trial counsel knew of the charges
    filed against Vang stemming from this incident, but nonetheless failed to question Vang about those
24  charges at trial, perhaps because of his own conflict of interest stemming from his earlier
    representation of Vang and his prior firm's representation of Vang in this very investigation.  If, prior
25  to petitioner's trial, his defense counsel was aware of the charges brought against Vang, petitioner's
    Brady claim would fail.  See, e.g., United States v. Dupuy, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985)
26  (where the defendant is aware of the essential facts enabling him to take advantage of any

                                                    22

1        B.  Ineffective Assistance of Counsel/Conflict of Interest

2                Petitioner also claims that he received ineffective assistance of trial counsel.

3    Specifically, he contends that his counsel was operating under a conflict of interest because

4    counsel had "previously represented the alleged victim in this case and his firm acted as counsel

5    on charges directly related to this case." (Doc. No. 1 at 4.)  Petitioner argues that this conflict

6    resulted in "the obvious lackluster cross-examination of the alleged victim/former client of trial

7    counsel." (Id.)  He also argues that, absent the conflict, his trial counsel would have investigated

8    Vang's criminal background and discovered that Vang had been arrested for and charged with

9    assault with a firearm upon petitioner in connection with this very case. (Id. at 9.)  Moreover,

10   petitioner asserts that his trial counsel's former law firm was aware that Vang had been charged

11   with assault because Vang was then a client of that firm. (Id. at 10.)  Petitioner claims that,

12   because of the conflict arising from his trial counsel's previous and possibly ongoing

13   representation of and involvement with Vang, counsel failed to question Vang about the charges

14   brought against him for assaulting petitioner with a deadly weapon. (Id.)  In essence, petitioner

15   claims that his trial counsel's prior representation of and involvement with Vang, both personally

16   and as a former member of the law firm representing Vang, constituted a conflict of interest

17   which adversely affected counsel's representation of petitioner by limiting counsel's

18   impeachment of Vang and counsel's investigation into Vang's arrest and possible conviction on

19   charges related to petitioner's prosecution.

20               As described above, petitioner raised his claim of ineffective assistance of trial

21   counsel in his petition for writ of habeas corpus filed in the Sacramento County Superior Court.

22   That court rejected petitioner's arguments, reasoning as follows:

23   /////

24

25   exculpatory evidence, the Government does not commit a Brady violation by not bringing the
     evidence to the attention of the defense); United States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978)
26   (same).

23

Claims that could have been raised on appeal are not normally cognizable on habeas corpus.  (In re Dixon (1953) 41 Cal.2d 756, 759; Harris, supra, 5 Cal.4th at 828.)

Petitioner claims that he had a conflict of interest with trial counsel that denied him effective representation.  The issue of a potential conflict was raised on the record.  In particular, trial counsel disclosed that he worked for the Miller Law Group as of counsel and the Miller Law Group represented a witness, Andy Vang.  Counsel stated that he never substantively represented Vang.  He further disclosed that Vang's mother attempted to pay counsel, but that he directed his staff to refuse the payment and refer her to the Miller Law Group.  The trial court found that there was no conflict and if there was one, that Petitioner had waived the conflict on the record.  (See attached transcripts.)  Therefore, any claim regarding this conflict, which was discussed on the record, is barred by Dixon.

Petitioner now claims that trial counsel lied to the trial court when discussing the potential conflict of interest.  According to the transcripts, trial counsel represented to the court that he had previously conveyed to Petitioner the information about working for the Miller Law Group, which had represented Vang.  He also stated that Petitioner signed "something" that stated that counsel explained the issue to Petitioner.  In fact, Petitioner now claims those two representations were false.  Even if counsel's statements were false, Petitioner has not shown that a conflict actually existed.  At a minimum, the facts were disclosed on the record and the trial court found that no conflict existed, based in part on the fact that counsel never made any substantive appearances on Vang's behalf.  Petitioner also waived any conflict *on the record*.  Similarly Petitioner claims that he was unaware that Vang's mother tried to pay trial counsel, but that information was also disclosed on the record.  Finally, Petitioner claims that counsel maintained a relationship with Vang's family through closing arguments.  He refers to a page in the transcript that states: "Andy has three brothers and sisters back in my office."  Petitioner has not shown that the family's presence resulted in or reflected any improper conduct by counsel.  The reason behind Vang's family's presence at counsel's office is unknown.  Petitioner assumes or speculates that it is nefarious, but it is equally likely to be innocent.  Since it is Petitioner's obligation to show that he is entitled to relief, the claim is without merit.

(Resp't's Lod. Doc. 8 at "Page 3 of 6.")

The state court record reflects that the following discussion occurred during petitioner's trial regarding the possible conflict of interest resulting from trial counsel's involvement with or prior representation of Vang:

24

THE COURT:  . . . Briefly, Counsel, you discussed with me, and I just wanted to put it on the record, the conflict of interest, which is not truly a legal conflict of interest, but if you'd explain those circumstances just so that we can get it out and on the record.

MR. ROSENFELD:  Thank you, your Honor.

Your Honor, I have explained to Mr. Lor in the past that one of the complaining witnesses in this case, Mr. Andy Vang, was a long-time returning client of the Miller Law Group.  I explained to Mr. Lor that I used to work with the Miller Law Group as of counsel, not for the Miller Law Group.  I was never an employee of the Miller Law Group.

I was an employee of the Miller Law Group for a period of time, left the office, went to work for Rothschild, Wishek and Sands, went back to the Miller Law Group as of counsel, but during my time of as of [sic] counsel was when I first met Mr. Andy Vang.

I never controlled his file.  I was never privy to any conversations.  I made appearances on behalf of Mr. Russ Miller, just standing in for him on various court appearances for Mr. Andy Vang.

I told that to Mr. Lor because if there is an appearance of the possible impropriety of conflict, but none exists.  But I felt it was necessary that Mr. Lor have the information.

THE COURT:  He's previously, as I understand it –

And the appearances you made were continuances.  They weren't substantive matters like prelims or other things; is that correct?

MR. ROSENFELD:  No, your Honor.  I never made a substantive appearance that I can recall on behalf of Mr. Vang.

THE COURT:  You've informed me that you've explained this to Mr. Lor, and he's signed a written waiver of conflict?

MR. ROSENFELD:  It was about a year ago, your Honor, that I did explain it to him and had him sign something stating that I explained it to him.

I also want to further state that I have talked to Mr. Russ Miller, just in case my recollection was faulty, just to make sure with him, because he is the counsel for Mr. Vang, that I never did anything substantive, and Mr. Miller, after reviewing his notes and his file, told me I never did anything substantive, just made appearances for him.

THE COURT:  Mr. Lor, I just want to make it clear you're aware of this; is that correct?

25

1      THE DEFENDANT (through the interpreter):  Yeah.  Yes.

2      THE COURT:  Do you waive --

3      Do you still wish to have Mr. Rosenfeld as your attorney?

4      THE DEFENDANT (through the interpreter):  Yes.

5      THE COURT:  And do you waive any possible legal conflict there
       may have been as a result of his working for the same law firm that
6      represented the alleged victim?

7      THE DEFENDANT (through the interpreter):  Yes.

8      THE COURT:  All right.  The other thing is, counsel also told me
       that the mother of the victim just recently attempted to pay your
9      firm --

10     To make it clear for the record, you no longer work with Russ
       Miller Group, you're on your own, separate private firm; is that
11     correct?

12     MR. ROSENFELD:  Yes, your Honor.  For the last year and a half
       I have had my own practice.
13

14     THE COURT:  All right.  And then out of the blue, the mother of
       the alleged victim came to pay you money, presumably based on
       that prior representation by the Russ Miller Group; is that correct?
15

16     MR. ROSENFELD:  Yes, your Honor.

17     THE COURT:  And as you have explained it to both the
       prosecution and I, because of your concerns about the appearances,
       as well as any legal conflicts, appearances of impropriety and legal
18     conflicts, you instructed your staff not to accept the money and
       directed the mother to go to the Russ Miller Group; is that correct?
19

20     MR. ROSENFELD:  Yes, your Honor.

21     THE COURT:  All right.  As I understand it, you were not
       personally present; your secretary called you with the question as to
       what should I do, this woman wants to pay us money, we don't
22     represent her or the son.

23     MR. ROSENFELD:  That's correct, your Honor.

24     THE COURT:  And so you explained to them, your staff, what to
       do, to just direct the woman down the street.
25

26  /////  MR. ROSENFELD:  Yes, your Honor.

1      THE COURT:  All right.  Having that in mind, Mr. Lor, do you
       still wish to have Mr. Rosenfeld represent you in this case?
2
       THE DEFENDANT (through the interpreter):  Yes.
3
       THE COURT:  All right.  I'm satisfied there's no conflicts, legal
4      conflict, and if there is one, that the defendant, Mr. Lor, has waived
       any conflict and it's appropriate for counsel to continue
5      representing him in this case.

6  (RT at 3-7.)

7              Petitioner claims that "trial counsel and his firm" represented Andy Vang on the

8  assault and weapons charges stemming directly from the instant case, but that petitioner's

9  counsel did not advise the trial court of this at the time of the above-described colloquy regarding

10  the potential conflict.  (Doc. No. 1 at 9-10, 18.)  Petitioner contends that his trial counsel failed to

11  impeach Vang with his arrest and possible conviction on a charge of assault upon petitioner with

12  a deadly weapon in connection with this case, even though the Miller Law Group almost

13  certainly was in possession of all relevant information in this regard.  (Id. at 10.)

14              Petitioner has attached and incorporated his habeas petition filed in the California

15  Supreme Court to his federal habeas petition.  In that state habeas petition, petitioner claimed that

16  he did not understand the ramifications of his waiver of conflict-free counsel which was obtained

17  by the trial court.  (Id. at 16.)  He noted that he required a Hmong interpreter at all court hearings,

18  and states that he "never had the relevant facts, nor their true implications, sufficiently explained

19  to him."  (Id.)  Petitioner stated that his trial counsel "lied" when he told the trial court he had

20  previously informed petitioner of a potential conflict and obtained a written waiver of that

21  conflict from petitioner.  (Id. at 16-17.)  Petitioner noted, in this regard, that there is no evidence

22  in the record of any written waiver.  Petitioner also questions why the victim's mother would

23  have attempted to retain or pay petitioner's trial counsel instead of the Miller Law Group if

24  counsel's connection with the victim was as minimal as he represented it to be to the trial court.

25  (Id. at 17.)  Petitioner speculates that his trial counsel may have had a more substantial

26  involvement in the prior representation of Vang.  (Id.)  Petitioner asks:

27

> Why would the mother of the alleged victim track down Mr.
> Rosenfeld, at his own new practice, to pay him money, supposedly
> owed, for mere appearances made more than a year and a half
> before?  Why did she specifically come to Mr. Rosenfeld, with that
> money, instead of taking it to the "Miller Law Group?"

(Id.)  Petitioner also directs the court attention to his trial counsel's closing argument, wherein he

stated, "I had to spend some time because the binder I brought had five hundred pages in it, and

Andy has three brothers and sisters back in my office."  (Id. at 18-19; RT at 1006.)  Petitioner

quite fairly questions why the siblings of his alleged victim were "in [trial counsel's] office

during closing argument."  (Doc. No. 1 at 18-19.)

Petitioner also questions why his defense counsel did not follow up more closely

on Vang's admitted conviction for shooting into an occupied dwelling a year after the events at

issue at petitioner's trial.  (Id. at 22.)  He questions whether there was "a negotiated plea and

leniency provided [in that case] contingent upon Vang's cooperation and testimony in

petitioner's case?"  (Id.)  Further he notes, during cross-examination of Vang, petitioner's trial

counsel elicited testimony that Vang had a conviction for "firing a gun."  (RT at 160.)  However,

petitioner explains, his trial counsel did not ask any further questions about that prior conviction,

nor did he ask Vang whether he was charged with any crimes in connection with the incident

from which the charges against petitioner stemmed.  Petitioner argues that these obvious

omissions during the cross-examination of Vang were the result of counsel's conflict of interest.

In summary, petitioner claims that if the defense was aware of the facts surrounding the charges

brought against Vang, his trial counsel rendered ineffective assistance in failing to cross-examine

Vang and Det. Kang about those facts.  He contends that his trial counsel's previous relationship

with Vang constituted a conflict of interest which prevented him from effectively cross-

examining Vang and Det. Kang.  He also argues that his waiver of the conflict in the trial court

was not knowing and voluntary and that his trial counsel's representations in open court that

petitioner had been informed of the conflict and waived it in writing were false.

/////

1    It is well established that the right to effective assistance of counsel carries with it

2 "a correlative right to representation that is free from conflicts of interest." Wood v. Georgia,

3 450 U.S. 261, 271 (1981). See also Campbell v. Rice, 302 F.3d 892, 897 (9th Cir. 2002).

4 Conflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on

5 behalf of, a client are threatened by his responsibilities to another client or a third person or by

6 his own interests.  (See generally ABA, Model Rules Prof. Conduct, Rule 1.7 and commentary

7 (1983).  Conflicts may occur in various factual settings.  For example, conflicts may arise in

8 circumstances in which one attorney represents more than one defendant in the same proceeding.

9 See, e.g., Holloway v. Arkansas, 435 U.S. 475, 481-91 (1978).  Conflicts may also arise in

10 situations in which an attorney represents a defendant in a criminal matter and currently has or

11 formerly had an attorney-client relationship with a person who is a witness in that matter.  See,

12 e.g., Houston v. Schomig, 533 F.3d 1076, 1-81 (9th Cir. 2008); Thomas v. Municipal Court, 878

13 F. 2d 285 (9th Cir. 1989).  The rule prohibiting counsel from representing conflicting interests

14 serves to protect confidential information obtained during the course of an earlier representation,

15 ensure undivided attorney loyalty, and guard against infringement of the right to cross-

16 examination.  See Sanders v. Ratelle, 21 F.3d 1446, 1452-53 (9th Cir. 1994);  Fitzpatrick v.

17 McCormick, 869 F.2d 1247, 1251 (9th Cir. 1989); United States v. Allen, 831 F.2d 1487, 1497

18 (9th Cir. 1987); Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980).  Courts "generally presume

19 that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client."

20 Burger v. Kemp, 483 U.S. 776, 784 (1987).

21    In order to establish an ineffective assistance of counsel claim based on a conflict

22 of interest, a petitioner must show that an actual conflict of interest adversely affected his

23 lawyer's performance.  Mickens v. Taylor, 535 U.S. 162, 174 (2002); Cuyler v. Sullivan, 446

24 U.S. 335, 348-350 (1980); Lewis v. Mayle, 391 F.3d 989, 997 (9th Cir. 2004); Mannhalt v Reed,

25 847 F.2d 576, 582 (9th Cir. 1988) (adverse effects found where a conflict "may have impacted

26 the manner of the cross-examination" by the attorney).  The existence of an actual conflict

1  "cannot be governed solely by the perceptions of the attorney; rather, the court itself must

2  examine the record to discern whether the attorney's behavior seems to have been influenced by

3  the suggested conflict." Sanders, 21 F.3d at 1452.[7]  The mere possibility that an attorney had a

4  conflict of interest is insufficient to entitle a petitioner to habeas relief.  Rather, the petitioner

5  must show that: (1) his attorney actively represented conflicting interests, and (2) the conflict

6  "actually affected" the adequacy of the attorney's representation.  Cuyler, 446 U.S. at 349-50.

7  See also Campbell, 302 F.3d at 897; Lockhart, 250 F.3d at 1229.  A defendant "need not

8  demonstrate prejudice in order to obtain relief."  Cuyler, at 349-50.  See also Delgado v. Lewis,

9  223 F.3d 976, 981 (9th Cir. 2000).  However, a defendant must show that "the attorney's

10  behavior seems to have been influenced" by the conflict."  Lockhart, 250 F.3d at 1231 (quoting

11  Sanders, 21 F.3d at 1452).

12          A defendant may "waive his right to the assistance of an attorney unhindered by a

13  conflict of interests."  Holloway, 435 U.S. at 483 n.5.  "A valid waiver of conflict of interest

14  must be voluntary, knowing, and intelligent, such that the defendant is sufficiently informed of

15  the consequences of his choice."  Lewis, 391 F.3d at 996.  See also Garcia v. Bunnell, 33 F.3d

16  1193, 1195 (9th Cir. 1994) ("Even if counsel is subject to an actual conflict of interest, however,

17  the trial court may generally allow the attorney to proceed if the defendant makes a voluntary,

18  knowing, and intelligent waiver."); Allen, 831 F.2d at 1494 ("[o]f course, a defendant may waive

19  his right to the assistance of an attorney who is unhindered by conflicts . . . provided the waiver is

20  given knowingly and intelligently.")  Whether there is a proper waiver is to be determined by the

21  trial court and any such waiver should appear on the record.  Johnson v. Zerbst, 304 U.S. 458,

22  464-65 (1938).  Resolution of the issue of waiver depends "upon the particular facts and

23  circumstances surrounding that case, including the background, experience, and conduct of the

24
                  [7]  If a defendant fails to object to representation by an attorney with a conflict, but shows on
25  appeal that "an actual conflict of interest adversely affected his lawyer's performance," reversal is
     required.  Lockhart v. Terhune, 250 F.3d 1223, 1229-30 (9th Cir. 2001) (quoting Cuyler, 446 U.S.
26  at 348).

1   accused." Id. See also Edwards v. Arizona, 451 U.S. 477, 482 (1981).  Moreover, a court must

2   "indulge every reasonable presumption against the waiver of fundamental rights." Lewis, 391

3   F.3d at 997 (citations omitted.)

4          In addressing petitioner's claim of ineffective assistance of counsel, the

5   Sacramento County Superior Court concluded, first, that "any claim regarding this conflict,

6   which was discussed on the record, is barred by Dixon."  (Resp't's Lod. Doc. 8 at "Page 3 of 6.")

7   To the extent the Superior Court rejected petitioner's claim of ineffective assistance of counsel

8   on procedural grounds alone – i.e., that the claim was barred by In re Dixon – and not on the

9   merits of the claim, Pinholster does not prohibit an evidentiary hearing in these federal habeas

10  proceedings. Pinholster, 131 S. Ct. at 1398; Robinson, 663 F.3d at 823.

11         Second, the Superior Court concluded that even if the representations petitioner's

12  trial counsel made to the trial court about a possible conflict were false, "Petitioner has not

13  shown that a conflict actually existed . . . based in part on the fact that counsel never made any

14  substantive appearances on Vang's behalf." (Resp't's Lod. Doc. 8 at " Page 3 of 6.")  This

15  statement is contrary to well-established federal law.  The Ninth Circuit has explained that "the

16  Sixth Amendment does not protect against a 'mere theoretical division of loyalties.'" Alberni v.

17  McDaniel, 458 F.3d 860, 870 (9th Cir. 2006).  "Rather, it protects against conflicts of interest

18  that adversely affect counsel's performance." Id.  Accordingly, "an actual conflict of interest

19  [means] precisely a conflict *that affected counsel's performance* – as opposed to a mere

20  theoretical division of loyalties.'" Id. (quoting Mickens, 535 U.S. at 171.)  Put another way, "a

21  court is not required to inquire 'into actual conflict as something separate and apart from adverse

22  affect.'" Id. at 871 (quoting Mickens, 535 U.S. at 172 n.5.).

23         Here, petitioner has demonstrated that a possible conflict of interest may have

24  affected his trial counsel's performance.  In this regard, it is undisputed that petitioner's trial

25  counsel had a prior, and possibly ongoing, attorney-client relationship with Vang and his family.

26  Petitioner's counsel did not question Vang at petitioner's trial about whether he was charged with

31

1   assault upon petitioner in connection with this case.  Even if the assault charge against Vang was

2   dismissed, one would have expected counsel to cross-examine him on this subject on in order to

3   attempt to impeach his story that petitioner was the only person who fired a gun during the

4   incident.  The fact that both petitioner and Vang were originally charged with assault in

5   connection with the incident would appear to be highly relevant for impeachment purposes.

6   Likewise, one would think that defense counsel would have questioned Det. Kang about the

7   assault charge brought against Vang in connection with this incident.  The fact that counsel did

8   not raise these questions may suggest that a conflict affected his performance.  See Houston, 533

9   F.3d at 1082 (an evidentiary hearing was required on a conflict of interest claim arising from fact

10  that petitioner was represented by another member of the same public defender's office that had

11  represented the victim and key witness in the past and "as it now stands, the record is insufficient

12  for us to determine whether an actual conflict of interest existed, or whether (trial counsel)

13  labored under a perceived conflict and limited his cross-examination of (counsel's former client)

14  as a result.").  There may well be legitimate tactical reasons for petitioner's trial counsel's failure

15  to question the witnesses on these matters, however, this court will not speculate as to what those

16  reasons might have been.  Rather, an evidentiary hearing is necessary so that these issue may be

17  resolved on their merits and based upon actual evidence.

18          Finally, the Superior Court concluded that petitioner "waived any conflict on the

19  record." (Resp't's Lod. Doc. 8 at "Page 3 of 6.")  However, petitioner has provided evidence that

20  his purported waiver in the trial court may not have been voluntary, knowing, and intelligent and

21  that he did not validly waive his right to conflict-free counsel.  Petitioner explains that he did not

22  understand the nature of the conflict or its ramifications and that his trial counsel lied to the trial

23  court when he stated that he had explained the situation to petitioner.  Perhaps based on trial

24  counsel's representations, the trial court did not explain those ramifications to petitioner in open

25  court.  It is not clear whether petitioner's trial counsel misled the trial court, as alleged by

26  petitioner, when he stated that he had explained the waiver to petitioner and had obtained a

32

1   written, albeit unproduced, waiver of the conflict.  In any event, as noted by the United States

2   Supreme Court, "the willingness of an attorney to obtain such waivers from his clients may bear

3   an inverse relation to the care with which he conveys all the necessary information to them."

4   Wheat v. United States, 486 U.S. 153, 163 (1988).  As described above, petitioner alleges that his

5   trial counsel falsely informed the trial court that he had explained the nature of the conflict to

6   petitioner while failing to explain the true relationship between himself and Vang to the trial

7   court.  In light of these circumstances, petitioner has raised a significant question regarding the

8   validity of his waiver.  See Lewis, 391 F.3d at 996-97 (finding waiver invalid and state court

9   decision objectively unreasonable even where petitioner signed a written waiver where there was

10  no evidence that petitioner understood the "specific ramifications" of the waiver because he did

11  not seek outside counsel's advice "and had only a cursory discussion with the judge"); Lockhart,

12  250 F.3d at 1232 (concluding that the state court's determination that petitioner's waiver had

13  been knowing and intelligent was "an unreasonable application of Supreme Court precedent,"

14  because trial counsel misled the petitioner and the trial court as to the facts and significance of

15  the conflict); Haselton v. Director, California Department of Corrections, No. CIVS01-

16  0903GEBJFMP, 2005 WL 2071995 (E.D. Cal. Aug. 26, 2005) (court rejecting the waiver of

17  conflict-free representation where there was insufficient evidence that a written waiver was

18  knowing and voluntary because the written colloquy with the court was not on the record, the

19  record "did not specify the rights petitioner was informed about," and there was no evidence

20  petitioner was informed that his attorney "owed him a continuing duty of loyalty.")

21          The record before the Sacramento County Superior Court leaves significant

22  questions unanswered.  From that record it cannot be determined whether petitioner's trial

23  counsel had a conflict of interest and/or whether petitioner's waiver of any such conflict was

24  valid.  Specifically, it is unclear from that record, and is disputed by the parties, whether

25  petitioner was in possession of all relevant facts when he purportedly waived his right to conflict-

26  free counsel.  If he was not, any waiver was not knowing and intelligent.  Moreover, it is not

33

clear from the record whether trial counsel's performance was affected by any conflict. Specifically, it cannot be determine from this record whether petitioner's counsel failed to inquire of Vang about the assault charges that were brought against him in this case because of his prior relationship with and/or representation of Vang.  On this sparse and incomplete record it is not possible to determine whether petitioner's claim demonstrates a violation of his federal constitutional right to the effective assistance of counsel.  An evidentiary hearing is therefore necessary in order to resolve these factual issues.

The court's conclusion that an evidentiary hearing is necessary and appropriate finds support in the recent decision in Williams v. Woodford, No. 2:05-cv-00980-AK, 2012 WL 929666 (E.D. Cal. Mar. 19, 2012).  In that case, under circumstances quite similar to those presented here, The Honorable Alex Kozinski, Chief Circuit Judge for the Ninth Circuit sitting by designation, recently concluded that a state court decision on the petitioner's claim of ineffective assistance of counsel was based on an unreasonable determination of the facts before the state court when that court made assumptions about facts outside the record without giving petitioner an opportunity to present evidence, conduct discovery, or otherwise develop the record as to those facts. Williams, 2012 WL 929666 at *4-5.  In that case, the petitioner's trial counsel had promised the jurors that they would hear testimony from three "key witnesses," including petitioner Williams, but then failed to call them to the witness stand. Id. at *1.  After the verdict, petitioner moved unsuccessfully for a new trial based on his trial counsel's ineffective assistance in making these promises to the jury "despite having done nothing to secure the testimony of the two other witnesses, and despite working actively to dissuade Williams himself from testifying." Id. at *2.  On appeal, petitioner attempted to bring facts outside the record in support of his ineffective assistance of counsel claim to the attention of the California courts, but was rebuffed. Id. at *2-3.  As a result, the California Court of Appeal decided petitioner's direct appeal without the benefit of relevant facts and "made assumptions about facts outside the record without giving petitioner an opportunity to present evidence as to those facts . . . ." Id. at *4.  "In so doing, it

1  seriously misapprehended the facts outside the appellate record, no doubt because it had only the

2  appellate record to work with." Id.

3         In Williams the federal habeas court found that the state court's fact-finding

4  process was "fundamentally flawed" because it "granted no evidentiary hearing or other

5  opportunity for [petitioner] to develop his claim." Id. at *6 (quoting Hurles, 650 F.3d at 1311).

6  Because of these flaws in the fact-finding process, the petitioner was found to have "overcome[]

7  the section 2254(d)(2) bar based on the record that was before the state court when it adjudicated

8  his case." Id.  Accordingly, he was entitled to the opportunity to develop the record to support

9  his ineffective assistance of counsel claim.  The court in Williams distinguished Pinholster on the

10 basis that "Pinholster isn't relevant where, as here, petitioner surmounts section 2254(d) because

11 he was not allowed to develop the record in state court." Id. at *7.

12         Similarly, here the Sacramento County Superior Court's decisions that petitioner

13 failed to demonstrate ineffective assistance of counsel based on a conflict of interest and that he

14 entered a knowing and intelligent waiver of his right to conflict-free representation were rendered

15 without the benefit of sufficient evidence necessary to support those findings.  As in Williams,

16 the Superior Court's failure to conduct an evidentiary hearing "violated petitioner's right to a fair

17 process for developing the record supporting his claim, in violation of Taylor [v. Maddox] and

18 Hurles [v. Ryan]." Id. at *5.  Under these circumstances, petitioner has overcome the limitation

19 of § 2254(d)(2) on the record that was before the state court with respect to his ineffective

20 assistance of counsel claim. Id.  Accordingly, the decision in Pinholster does not preclude the

21 holding of an evidentiary hearing in this court.

22                                CONCLUSION

23         For the reasons set forth above, petitioner has satisfied the requirements for an

24 evidentiary hearing in this federal habeas action in keeping with the holding of the Supreme

25 Court in Pinholster.  He has demonstrated that the state court's denial of habeas relief and the

26 rejection of his request for an evidentiary hearing in that court was unreasonable, and he has done

                                      35

so on the basis of the record that was before the state court.  Accordingly, upon reconsideration, this court will once again schedule an evidentiary hearing to determine whether petitioner is entitled to federal habeas relief.

IT IS HEREBY ORDERED that:

1. An evidentiary hearing is set for June 20, 2012 at 9:00 a.m. in Courtroom 27; and

2. The evidentiary hearing will be limited to: (1) the receipt of testimony from petitioner's trial counsel regarding the issues described by the court at the January 6, 2011 hearing on petitioner's motion for an evidentiary hearing; and (2) the receipt of any other evidence relevant to the disposition of the issues raised by the pending petition as discussed above.[8]

DATED: May 4, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
lor2985.eh2

_____

[8]   As discussed at the January 6, 2012 hearing, it is anticipated that the evidence presented will focus on the following issues: (1) what was divulged to petitioner's trial counsel by the prosecution with respect to any and all charges brought against Andy Vang in connection with the incident which resulted in petitioner's conviction; (2) what was otherwise known to defense counsel about Vang being charged in connection with that incident; (3) what was the final resolution of the criminal charges brought against Vang in connection with that incident; (4) what was the nature of the relationship between Vang and his family and petitioner's counsel, including the facts surrounding trial counsel being approached by Vang's family; (5) what was the relationship between trial counsel's prior law firm and Vang; (6) were all relevant facts regarding the possible conflict of interest divulged to petitioner by his counsel; (7) the nature of the waiver of conflict free representations that was entered on the record by petitioner at his trial; (8) on what basis were decisions made by petitioner's trial counsel's with respect to his cross-examination of Vang at trial; and (9) specifically, whether petitioner's trial counsel was influenced in the manner in which he cross-examined Vang and Det. Kang by any prior representation of Vang by himself or his previous law firm, whether divulged or not divulged to petitioner.