1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10    YOUNG LOR,

11              Petitioner,              No. CIV S-08-2985 TLN DAD P

12         vs.

13    TOM FELKER,

14              Respondent.            FINDINGS & RECOMMENDATIONS

15    _____/

16              Petitioner is a state prisoner proceeding through counsel with a petition for a writ

17    of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18    entered against him on November 18, 2004 in the Sacramento County Superior Court on two

19    counts of attempted murder with personal use of a firearm.  He seeks federal habeas relief on the

20    following grounds:  (1) the prosecutor violated his right to a fair trial in failing to disclose

21    exculpatory evidence to the defense; (2) his trial counsel rendered ineffective assistance; (3) the

22    trial court's failure to bifurcate trial on gang enhancement allegations violated his right to a fair

23    trial; and (4) the Antiterrorism and Effective Death Penalty Act of 1996 is unconstitutional.

24    Upon careful consideration of the record and the applicable law, the undersigned will

25    recommend that petitioner's application for habeas corpus relief be denied.

26    /////

1

PROCEDURAL AND FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal[1], the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Yong Lor appeals after a jury convicted him of two counts of attempted murder and found true gang and personal firearm use enhancements. He argues: (1) the gang enhancement is not supported by the evidence; (2) the court should have granted his motion to bifurcate trial of the gang enhancement; and (3) insufficient evidence was adduced to establish that he acted with the intent to kill or express malice required to sustain the attempted murder convictions. The first contention has merit; the remaining two do not. Accordingly, we will strike the gang enhancement and affirm the judgment as modified.
>
> FACTS AND PROCEDURAL BACKGROUND
>
> Defendant is a member of a gang known as the Asian Family Gangsters (AFG), which is part of the Hmong Nation Society (HNS), a gang based in the northern area of Sacramento. A rival gang, the Masters of Destruction (MOD), and an associated gang calling itself the Young Mafia Society (YMS), consider the southern area of Sacramento to be their territory. During the summer of 2001, the rival gangs were at war, with at least a dozen shootings between them.
>
> On July 18, 2001, defendant, armed with a loaded weapon, drove into the Meadowview area of southern Sacramento. He accosted T.V., a 15-year-old boy who was a member of the YMS. T.V. had a loaded .32 caliber semiautomatic handgun in his pocket, and was carrying a pit bull puppy to show his friend who was waiting at the market of a nearby gas station. Using gang parlance, defendant asked T.V. about his gang membership. Not recognizing defendant, T.V. denied being a gang member, but asked defendant "where are you from." Defendant responded with the letter "H," which signified both his membership in the HNS and an aggressive intent, since he was confronting T.V. in MOD territory.
>
> T.V. ignored defendant's response and proceeded to the market, where he met Zang Her, also a MOD member, and Her's wife, Helen. Upon arriving, he put the puppy down, turned in defendant's direction, raised his arms in the air and said, "What's

---

[1] People v. Lor, No. C049133, 2007 WL 1874424 (Cal. App. 3d Dist. June 29, 2007) (unpublished disposition) (hereinafter "Opinion"). See also document entitled "Exhibit," attached to the instant petition.

2

up?" The gesture and words were intended to force defendant either to return and fight T.V., or to leave.

Upon seeing the gesture of engagement, defendant turned his car around and drove directly toward T.V. and his two companions. Defendant stuck his gun outside the driver's side window, stopped the car about 20 to 36 feet from T.V., and fired at least a dozen shots at T.V. and Her. Several shots were aimed at T.V.'s head. T.V. returned fire. After several rounds hit the side of defendant's car, defendant sped away.

T.V. was shot in the hand and elbow. Her was shot in the buttocks. The puppy was also injured.

Defendant's car was found later that night at an apartment complex in North Sacramento. It had three bullet holes in the driver's side door, which had been recently taped and painted. Defendant was arrested in Wisconsin several months later. The arresting officer told defendant that he was being arrested on a California warrant involving a homicide case. Defendant asked, "Did the guy die?"

Defendant testified that he was the victim of an unprovoked assault. He explained that he was in the Meadowview area because he had just finished taking his five-year-old stepdaughter to visit his sister. While stopped at an intersection, he heard his car's glass shatter, and believed he was being attacked. Shielding the child from the assault, defendant returned fire with a gun he kept under the front seat. Then he stepped on the gas. Defendant admitted he used to be a member of HNS, but denied being an active member on the day of the shootings.

Lor, 2007 WL 1874424, at **1-2.

After petitioner's judgment of conviction was affirmed by the California Court of Appeal, he filed a petition for review in the California Supreme Court, claiming that the trial court's denial of his motion to bifurcate the trial of the gang enhancements from the trial of the underlying charges violated his federal right to due process, and that his attempted murder conviction was not supported by sufficient evidence. (Resp't's Lod. Doc. 6.) That petition for review was summarily denied. (Resp't's Lod. Doc. 7.)

Petitioner subsequently filed a petition for writ of habeas corpus in the Sacramento County Superior Court, claiming that he received ineffective assistance of trial counsel, that the trial court erred in failing to bifurcate the trial of the gang enhancements from

1   the trial on the underlying charges, and that the prosecutor committed misconduct in withholding

2   exculpatory evidence from the defense.  (Resp't's Lod. Doc. 8.)  That habeas petition was denied

3   in a reasoned decision dated February 28, 2008.  (Id.)  Petitioner then filed petitions for writ of

4   habeas corpus in the California Court of Appeal and California Supreme Court, raising the same

5   claims as presented to the Sacramento County Superior Court.  (Resp't's Lod. Docs. 9, 10.)

6   Those state habeas petitions were summarily denied.  (Id.)

7           The habeas petition pending before this court was filed on December 8, 2008.

8   Respondent filed an answer on February 9, 2009, and petitioner filed a traverse on May 6, 2009.

9   On May 11, 2009, petitioner filed a request for an evidentiary hearing on his claims of ineffective

10  assistance of counsel and prosecutorial misconduct.  (Doc. No. 29.)

11          On July 27, 2010, this court appointed counsel for petitioner.  (Doc. No. 36.)  On

12  October 12, 2010, after two status conferences, the court issued an order allowing petitioner to

13  file a second motion for evidentiary hearing and/or discovery.  (Doc. No. 46.)  Pursuant to that

14  order, petitioner filed a motion for discovery and an evidentiary hearing on October 29, 2010.

15  (Doc. No. 47.)  On January 10, 2011, after a hearing, this court granted petitioner's October 29,

16  2010 motion, in part, and ordered that a limited evidentiary hearing would be held on his claims

17  of prosecutorial misconduct and ineffective assistance of counsel.  (Doc. No. 52.)  On March 31,

18  2011, respondent's motion for reconsideration of the January 10, 2011 order was denied by the

19  then-assigned district judge.  (Doc. No. 61.)

20          On April 4, 2011, the Supreme Court decided the case of Cullen v. Pinholster, ___

21  U.S. ___, 131 S. Ct. 1388 (2011).  On April 7, 2011, this court issued an order advising the

22  parties that, in light of the decision in Pinholster, the court intended to sua sponte reconsider its

23  January 10, 2011 order granting a limited evidentiary hearing in this case.  The court directed the

24  parties to file briefing addressing the impact of the decision in Pinholster on petitioner's request

25  for an evidentiary hearing.  (Doc. No. 62.)  On May 7, 2012, after receiving the parties'

26  responsive briefs, this court issued another order granting petitioner an evidentiary hearing on his

4

1    claims of ineffective assistance of counsel and prosecutorial misconduct.  (Doc. No. 71.)  An

2    evidentiary hearing was then held pursuant to that order on January 28, 2013.

3                                                              ANALYSIS

4    I.  Standards of Review Applicable to Habeas Corpus Claims

5                   An application for a writ of habeas corpus by a person in custody under a

6    judgment of a state court can be granted only for violations of the Constitution or laws of the

7    United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

8    interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct.

9    13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146,

10   1149 (9th Cir. 2000).

11                  Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

12   habeas corpus relief:

13                        An application for a writ of habeas corpus on behalf of a
                    person in custody pursuant to the judgment of a State court shall
14                  not be granted with respect to any claim that was adjudicated on
                    the merits in State court proceedings unless the adjudication of the
15                  claim -

16                        (1) resulted in a decision that was contrary to, or involved
                    an unreasonable application of, clearly established Federal law, as
17                  determined by the Supreme Court of the United States; or

18                        (2) resulted in a decision that was based on an unreasonable
                    determination of the facts in light of the evidence presented in the
19                  State court proceeding.

20                  For purposes of applying § 2254(d)(1), "clearly established federal law" consists

21   of holdings of the United States Supreme Court at the time of the state court decision.  Stanley v.

22   Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06

23   (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

24   clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at

25   859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

26   /////

                                                                 5

1    A state court decision is "contrary to" clearly established federal law if it applies a

2  rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

3  Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640

4  (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

5  grant the writ if the state court identifies the correct governing legal principle from the Supreme

6  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

7  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

8  F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

9  simply because that court concludes in its independent judgment that the relevant state-court

10 decision applied clearly established federal law erroneously or incorrectly. Rather, that

11 application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v.

12 Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

13 habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

14 the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit

15 precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

16 the state court's decision." Harrington v. Richter, 562 U.S.___,___,131 S. Ct. 770, 786 (2011)

17 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for

18 obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

19 ruling on the claim being presented in federal court was so lacking in justification that there was

20 an error well understood and comprehended in existing law beyond any possibility for fairminded

21 disagreement." Richter,131 S. Ct. at 786-87.

22    If the state court's decision does not meet the criteria set forth in § 2254(d), a

23 reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v.

24

25    [2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
26 presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
   384 F.3d 628, 638 (9th Cir. 2004)).

1    Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

2    Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

3    of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

4    considering de novo the constitutional issues raised.").

5           The court looks to the last reasoned state court decision as the basis for the state

6    court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

7    2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

8    from a previous state court decision, this court may consider both decisions to ascertain the

9    reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

10   banc).  "When a federal claim has been presented to a state court and the state court has denied

11   relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

12   of any indication or state-law procedural principles to the contrary."  Richter, 131 S. Ct. at 784-

13   85.  This presumption may be overcome by a showing "there is reason to think some other

14   explanation for the state court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker,

15   501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects

16   some claims but does not expressly address a federal claim, a federal habeas court must presume,

17   subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams,

18   ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013).

19          Where the state court reaches a decision on the merits but provides no reasoning

20   to support its conclusion, a federal habeas court independently reviews the record to determine

21   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

22   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

23   review of the constitutional issue, but rather, the only method by which we can determine

24   whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.

25   Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

26   there was no reasonable basis for the state court to deny relief."  Richter, 131 S. Ct. at 784.

1    When it is clear, however, that a state court has not reached the merits of a

2 petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

3 federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v.

4 Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.

5 2003).

6 II.   Petitioner's Claims[3]

7    A.   Prosecutorial Misconduct: Brady Claim

8       1.   Background

9    Petitioner's first claim is that his due process rights under Brady v. Maryland, 373

10 U.S. 83 (1963) were violated when the prosecutor failed to produce exculpatory evidence to the

11 defense.  (Doc. No. 1 at 7.)[4]  As noted above, petitioner was charged with and convicted of

12 attempted murder with use of a firearm.  Petitioner alleges that the victim, Andy Vang, was also

13 arrested and charged with assault with a firearm in connection with this very incident, and may

14 have been convicted of that crime.  (Id. at 7-8.)  Petitioner argues that the prosecutor should have

15 provided this evidence to the defense and/or elicited the information from Andy Vang and

16 Detective Kang, the prosecution's gang expert, when they testified at petitioner's trial.  (Id.)

17 Petitioner contends that this evidence was relevant to his self-defense theory presented at his trial

18 and would have been valuable impeachment evidence against both the victim, Vang, and

19 Detective Kang.  (Id. at 8-9.)  Petitioner notes that Det. Kang was called as a witness by the

20 prosecution but was not asked about the assault charge filed against Vang.  (Id. at 8.)

21 /////

22

23       [3]  Petitioner's claims are contained in his petition for writ of habeas corpus filed in the
24 California Supreme Court, which is attached to his federal habeas petition.  (Doc. No. 1 at 13-
55.)  He elaborates on several, but not all of these claims in his form application for federal
25 habeas relief.  (Id. at 4-12.)

26       [4]  This court will refer to page numbers of the parties' pleadings by using the automated
numbers assigned by the court's electronic filing system.

Petitioner argues that information that Andy Vang was arrested and charged with assault in connection with this incident "transcends being merely 'impeachment evidence' as it goes directly to the very heart of this case; who initiated the violence." (Id. at 7-8.)  He argues that the fact the prosecuting authorities had enough evidence to charge Vang with assault raises a significant question with regard to the identity of the aggressor in this case and, if it had been divulged, could have given rise to a reasonable doubt as to petitioner's guilt.  Put another way, petitioner argues that the prosecutor's failure to fully disclose the facts surrounding the assault charges brought against Andy Vang in connection with this same incident "adversely impacted" the presentation of his defense based upon a theory of self-defense because "had he been able to show that the alleged victim had been charged, arrested, possibly convicted of being the initiator of the violence there is substantially more than a mere probability of a different outcome."  (Id. at 9.)

Petitioner also claims that evidence regarding the charges brought against Vang, including the evidence relied on to support those charges, was relevant to impeach the credibility of Det. Kang, who "spent more time on the witness stand than anybody in Petitioner's case, never mentioned that he had arrested Vang on the P.C. 245(a)(1) and never mentioned to the court or jury that Vang had been charged with that offense."  (Id. at 8.)  According to petitioner, because this undisclosed evidence was relevant to impeach Det. Kang's credibility, it is irrelevant in determining whether petitioner's due process rights were violated by the non-disclosure whether Vang was actually convicted of the assault.  (Id.)

In support of these arguments, petitioner has filed with this court a copy of a California Law Enforcement Tracking System (CLETS) database printout, also known as a "rap sheet," pertaining to Andy Vang.  (Id. at 85, 88.)  Although difficult to decipher, the first and second pages of this document when read together appear to reflect that on September 21, 2001, in case No. #01F06166, Vang was charged with (and eventually convicted of) illegal possession of a concealed weapon and "assault with firearm on person."  (Id.)  The first entry on the second

1   page reflects that on November 2, 2001, also in case No. #01F06166, Vang was convicted of

2   those same two charges.  (Id. at 88.)  The third entry reflects that also on November 2, 2001,

3   again in case No. #01F06166, Vang was convicted of illegal possession of a concealed weapon,

4   but that the charge of "assault with firearm on person" was "dismissed."  (Id.)  Finally, the rap

5   sheet indicates that on his felony conviction Vang was sentenced to 7 years probation with the

6   condition that he serve 180 days in the county jail.  (Id.)

7          It is not clear from the face of this CLETS printout whether the charge brought

8   against Vang of assault with a firearm on a person was eventually dismissed before petitioner's

9   trial commenced, or whether Vang was ultimately convicted of that offense.  (Id.)  However,

10  petitioner argues that regardless of whether Vang was actually convicted of the assault charge,

11  the fact the prosecution withheld the information that Vang was charged with assault in

12  connection with the incident over which petitioner was convicted constitutes a Brady violation.

13  Petitioner asks:

14          Should Petitioner have been permitted a fair opportunity to
            impeach the witnesses, Andy Vang and Detective Kang?  Was he
15          afforded that right given that the State suppressed the evidence of
            Vang's prosecution for ASSAULT WITH FIREARM ON
16          PERSON directly related to this case?  If the prosecution itself had
            "reasonable doubt" about who initiated the gunfire – as is
17          irrefutably proven by its charging of Vang for ASSAULT WITH
            FIREARM ON PERSON – weren't the trial court, jury, and
18          defendant entitled to know that?

19  (Id.)

20          In sum, petitioner claims that the prosecutor violated the dictates of Brady in

21  failing to disclose evidence of the actual charges brought against Andy Vang in connection with

22  the incident for which petitioner stood trial.  He argues that this evidence would have been

23  material to his defense that he was not the aggressor but rather the victim, would have

24  undermined the prosecution theory that Vang was not the aggressor, and also would have

25  impacted the credibility of both witnesses Vang and Det. Kang.  Petitioner states that he was

26  /////

10

1  unaware of the charges brought against Vang until after his trial was over.  (Doc. Nos. 1 at 8; 63

2  at 3.)

3           As set forth above, petitioner raised his <u>Brady</u> claim in a petition for writ of

4  habeas corpus filed in the Sacramento County Superior Court.  There, he claimed that the

5  prosecutor violated his constitutional rights by failing to turn over to the defense exculpatory

6  material regarding the charges brought against Vang in connection with this case, including the

7  disposition of those charges.  (Resp't's Lod. Doc. 8, Pet. for Writ of Habeas Corpus at 34-40.)

8  The Superior Court rejected petitioner's arguments, reasoning as follows:

9           THE BRADY CLAIM IS WITHOUT MERIT

10          A petitioner seeking relief by way of habeas corpus has the burden
            of stating a prima facie case entitled him to relief.  (<u>In re Bower</u>
11          (1985) 38 Cal.3d 865, 872.)  A petition for writ of habeas corpus
            should attach as exhibits all reasonably available documentary
12          evidence or affidavits supporting the claim.  (<u>People v. Duvall</u>
            (1995) 9 Cal.4th 464, 474.)  The prosecution has the duty to
13          disclose any material exculpatory evidence to the defense.  (Pen.
            Code, § 1054.1(e); <u>Brady v. Maryland</u> (1963) 373 U.S. 83.)
14
            Petitioner claims that the prosecutor failed to disclose evidence that
15          the victim in Petitioner's case, Andy Vang, was convicted of
            assault with a deadly weapon in violation of Penal Code section
16          245(a)(1).  He attaches as "proof" a copy of Vang's CLETS rap
            sheet showing that Vang was "convicted."  A person's rap sheet is
17          not evidence.  It is inadmissible hearsay.  (<u>See</u> Evid. Code § 1200.)
            Although Vang was arrested for a violation of Penal Code section
18          245(a)(1) and was charged with that offense, the charge was
            dismissed.  Therefore, Petitioner has not shown that there was any
19          material exculpatory evidence that the prosecutor failed to disclose.

20  (<u>Id.</u>, Superior Court decision at "Page 2 of 6.")[5]

21          Petitioner's allegations before this court raise two separate but related claims.

22  First, petitioner claims that the prosecutor committed misconduct under <u>Brady</u> in failing to

23

24          [5]  Petitioner also raised his claim of prosecutorial misconduct in his habeas petitions filed
     in the California Court of Appeal and California Supreme Court.  Those petitions were
25   summarily denied.  (Resp't's Lod. Docs. 9, 10.)  Accordingly, this court will analyze the Superior
     Court's decision as the relevant state-court determination under AEDPA.  <u>Ylst</u>, 501 U.S. at 806;
26   <u>Robinson</u>, 360 F.3d at 1055.

1  disclose evidence that Andy Vang was convicted of assault with a deadly weapon in connection

2  with the shooting for which petitioner was convicted.  Second, petitioner claims that, whether or

3  not Vang was convicted, the prosecutor committed misconduct under <u>Brady</u> in failing to disclose

4  to the defense that Andy Vang had been <u>charged with assault</u> with a deadly weapon in connection

5  with this case.

6          In the May 7, 2012 order setting an evidentiary hearing, this court found that the

7  Sacramento County Superior Court's decision on petitioner's claim that the prosecutor

8  committed a <u>Brady</u> violation in failing to disclose that Andy Vang was convicted of assault in

9  connection with this case was based on an unreasonable determination of the facts in light of the

10  evidence presented in the state court proceedings, and was therefore not entitled to deference

11  pursuant to 28 U.S.C. § 2254(d)(2).  (Doc. No. 71 at 17-19.)  In light of that previously made

12  ruling, this court must decide this aspect of petitioner's <u>Brady</u> claim de novo.  <u>Stanley</u>, 633 F.3d

13  at 860; <u>Frantz</u>, 533 F.3d at 735.

14          This court also determined in the May 7, 2012 order that petitioner's claim that

15  the prosecutor committed misconduct in failing to disclose to the defense that Andy Vang had

16  been charged with assault in connection with this case was not considered or addressed on the

17  merits by the Sacramento County Superior Court in its decision on petitioner's habeas claims.

18  (Doc. No. 71 at 20-21.)  After the May 7, 2012 order was issued, the United States Supreme

19  Court held that where a state court issues an opinion that addresses some issues but does not

20  expressly address the federal claim in question, the federal habeas court must presume, subject to

21  rebuttal, that the federal claim was adjudicated on the merits.  <u>Johnson</u>, 133 S. Ct. at 1091.

22  Petitioner has not attempted to rebut the presumption that the Sacramento County Superior Court

23  considered, but rejected, his claim that the prosecutor committed misconduct in failing to

24  disclose to the defense that Vang had been charged with assault with a deadly weapon in

25  connection with this case.  Accordingly, this court will, as it now must, assume that the Superior

26  Court rejected that claim on the merits, and will analyze it pursuant to the standards set forth in

1   28 U.S.C. § 2254(d).  Johnson, 133 S. Ct. at 1094 ("we see no reason why the Richter

2   presumption should not also apply when a state-court opinion addresses some but not all of a

3   defendant's claims.").

4                    2.  Applicable Law

5          The United States Supreme Court has held "that the suppression by the

6   prosecution of evidence favorable to an accused upon request violates due process where the

7   evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

8   the prosecution."  Brady, 373 U.S. at 87.  See also Youngblood v. West Virginia, 547 U.S. 867,

9   869 (2006) ("A Brady violation occurs when the government fails to disclose evidence materially

10   favorable to the accused").  The "central premise" of the Brady decision is that "even though an

11   individual prosecutor may win a conviction, society as a whole loses when that conviction is

12   wrong."  Gonzalez v. Wong, 667 F.3d 965, 981 (9th Cir. 2011).  The duty to disclose evidence

13   favorable to the defense is applicable even though there has been no request by the accused,

14   United States v. Agurs, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as

15   well as exculpatory evidence.  United States v. Bagley, 473 U.S. 667, 676 (1985); Gonzalez, 667

16   F.3d at 981.  There are three components of a Brady violation:  "[t]he evidence at issue must be

17   favorable to the accused, either because it is exculpatory, or because it is impeaching; the

18   evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice

19   must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  See also Skinner v.

20   Switzer, ___U.S. ___, 131 S. Ct. 1289, 1300 (2011); Banks v. Dretke, 540 U.S. 668, 691 (2004);

21   Maxwell v. Roe, 628 F.3d 486, 509 (9th Cir. 2010).  In order to establish prejudice, a petitioner

22   must demonstrate that "'there is a reasonable probability' that the result of the trial would have

23   been different if the suppressed documents had been disclosed to the defense."  Strickler, 527

24   U.S. at 289.  "The question is not whether petitioner would more likely than not have received a

25   different verdict with the evidence, but whether "in its absence he received a fair trial, understood

26   as a trial resulting in a verdict worthy of confidence."  Id. (quoting Kyles v. Whitley, 514 U.S.

419, 434  (1995)).  See also Hein v. Sullivan, 601 F.3d 897, 906 (9th Cir. 2010); Silva v. Brown,

416 F.3d 980, 986 (9th Cir. 2005) ("a Brady violation is established where there 'the favorable

evidence could reasonably be taken to put the whole case in such a different light as to

undermine confidence in the verdict'")

Information that is required to be disclosed under Brady "includes "material . . .

that bears on the credibility of a significant witness in the case." United States v. Brumel-

Alvarez, 991 F.2d 1452, 1461 (9th Cir. 1992) (quoting United States v. Strifler, 851 F.2d 1197,

1201 (9th Cir. 1988)).  See also Killian v. Poole, 282 F.3d 1204, 1210 (9th Cir. 2002) (habeas

relief granted where undisclosed letters would have been valuable to the defense in impeaching

"make-or-break" witness' credibility before the jury); Singh v. Prunty, 142 F.3d 1157, 1161-63

(9th Cir. 1998) (petitioner was entitled to habeas relief where the prosecution suppressed

evidence of agreement to provide benefits to a key witness in exchange for his testimony, and a

reasonable probability existed that had evidence been disclosed, one or more members of jury

would have viewed the witness's testimony differently).  In determining whether the suppression

of impeachment evidence is sufficiently prejudicial to rise to the level of a Brady violation, a

reviewing court must analyze the totality of the undisclosed evidence "in the context of the entire

record," Agurs, 427 U.S. at 112, because "[t]he cumulative effect of all the undisclosed evidence

may violate due process and warrant habeas relief under AEDPA."  Maxwell, 628 F.3d at 512

(citing Barker v. Fleming, 423 F.3d 1085, 1094 (9th Cir. 2005)).  "Whether the suppressed

evidence was material must be considered collectively, not item by item."  Maxwell, 628 F.3d at

509.  Once the materiality of the suppressed evidence is established, no further harmless error

analysis is required.  Kyles, 514 U.S. at 435-36; Silva, 416 F.3d at 986.

However, "[w]here the defendant is aware of the essential facts enabling him to

take advantage of any exculpatory evidence, the Government does not commit a Brady violation

by not bringing the evidence to the attention of the defense."  United States v. Brown, 582 F.2d

197, 200 (2d Cir. 1978).  See also United States v. Alvarez, 86 F.3d 901, 905 (9th Cir. 1996)

14

1    (when Brady material concerns impeachment evidence against a government witness, Brady error

2    is avoided so long as the defendant can present the evidence to the jury and can fully

3    cross-examine the witness); United States v. Dupuy, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985)

4    (citing Brown with approval); United States v. Griggs, 713 F.2d 672, 674 (11th Cir. 1983)

5    ("Where defendants . . . had within their knowledge the information by which they could have

6    ascertained the supposed Brady material, there is no suppression by the government").

7                          2.   Analysis

8                   At the January 28, 2013 evidentiary hearing, petitioner's trial counsel was asked

9    whether he was aware that Andy Vang had been charged with assault in connection with the

10   same incident for which petitioner was eventually convicted.  (Doc. No. 98 (hereinafter

11   Transcript), at 6.)  Counsel responded,

> To the best of my recollection, I can't tell you yes or no to that.  It
> certainly would not have surprised me, or shocked me.  I do know
> this, he was not convicted.

14   (Id. at 7.)  However, counsel stated that he "would have been given the rap sheet that's required

15   under Brady v. Maryland and 1054 of the Penal Code from the prosecution is likely what I would

16   have relied upon.  (Id. at 8.)  Petitioner's trial counsel testified that he understood that the "final

17   outcome" of Vang's case was "possession of a weapon and that there was no prosecution, or the

18   charges were dismissed as far as [assault]."  (Id.)  Later during the evidentiary hearing,

19   petitioner's trial counsel testified that he was aware at the time of petitioner's trial that "there

20   wasn't a conviction on behalf of Mr. Vang for this incident," but that "there was a [conviction

21   for] possession."[6]  (Id. at 12.)

22   /////

23   /////

24   _____

25        [6]  At the evidentiary hearing conducted in this federal habeas proceeding, it was clearly
     established that Andy Vang was charged with assault in connection with the incident for which
26   petitioner was convicted, but that the assault charge was in fact dismissed six weeks after it was
     filed.  (Id. at 25-26.)

15

1          Petitioner's trial counsel also testified that, even if he knew that Andy Vang had

2   been charged with assault in connection with the incident for which petitioner was on trial, he

3   would not have cross-examined Vang or Detective Kang regarding that subject.  (Id. at 21.)

4   Petitioner's trial counsel explained that he did not want to "bolster the credibility of the

5   prosecution's case by having the jury know that they were both arrested and that the district

6   attorney reviewed the files of both and determined that Mr. Vang was credible, and Mr. Lor was

7   not."  (Id. at 21-22.)  In other words, petitioner's trial counsel indicated that he did not want to

8   "bolster[] credibility . . . on behalf of the prosecution against my client." (Id. at 22.)

9          Petitioner's trial counsel also explained that he believed Mr. Vang's trial

10  testimony had not been credible with respect to the number of bullets he fired at the scene, and he

11  did not wish to highlight for the jury that the police and/or the District Attorney had ultimately

12  believed Mr. Vang's version of the events over petitioner's.  (Id. at 23-24.)  He stated that he

13  "wanted it to be as unbiased and balanced as possible on a level playing field to show that Mr.

14  Lor was, indeed the victim of this case."  (Id. at 24.)  Petitioner's trial counsel also opined that

15  "without a conviction there are evidentiary hurdles to getting the evidence in."  (Id. at 28-29.)  In

16  this regard, petitioner's trial counsel explained at the evidentiary hearing as follows:

17              If you're asking me strategically why, well, there's evidentiary
                hurdles to begin with, without a conviction, and the second is, and
18              I'm not saying this was why, I don't know what information –  I
                did not have any information that the district attorney's office had
19              offered a deal to Mr. Vang.  I had no information that he was given
                any type of immunity.  I had no information whatsoever of that
20              nature.  The only information I had was that he had been arrested,
                and charges were . . . dismissed –
21

22  (Id. at 29-30.)

23          Trial counsel also testified that he believed he could demonstrate to the jury that

24  Vang had fired the first shot, based on ballistics evidence, and that he intended to argue this to

25  the jury during his closing argument.  (Id. at 40.)  He explained that he did not want to reveal this

26  theory of the defense prior to the presentation of his closing argument, and did not want the jury

16

1  to be influenced to believe Vang's version of the events simply because the charges against Vang

2  were dismissed and the charges against petitioner were allowed to proceed to trial.  (Id.)  Finally,

3  petitioner's trial counsel explained he feared that if he asked Detective Kang about the assault

4  charges brought against Vang, it might have "open[ed] the door" to questions about Kang's

5  knowledge of "negative aspects" of petitioner's background, or to the admission of damaging

6  evidence that had previously been ruled inadmissible by the trial judge.  (Id. at 44.)  Petitioner's

7  attorney explained that he "did some further investigation and looked prior [sic] backgrounds,

8  and it could have opened the door to excluded evidence that was done by Judge Mullen."  (Id.)

9         Trial counsel's testimony at the evidentiary hearing clearly reflects that he was

10  "aware of the essential facts enabling him to take advantage of any exculpatory evidence."

11  Brown, 582 F.2d at 200.  Specifically, petitioner's trial counsel testified that he would have been

12  given Vang's "rap sheet" by the prosecutor and that he "relied on that."  He also testified that he

13  knew Vang had been arrested but had not been convicted of assault and was instead convicted

14  only of a gun possession charge in connection with this incident.  At the very least, it is clear that

15  petitioner's counsel had all of the information necessary to determine whether Vang had been

16  charged with and/or convicted of assault in connection with the incident for which petitioner was

17  on trial.  In light of this, petitioner has failed to show that the prosecutor committed any Brady

18  violation at all.  Brown, 582 F.2d at 200; Alvarez, 86 F.3d at 905; Griggs, 713 F.2d at 674.

19         Petitioner has also failed to demonstrate prejudice with respect to his claim of

20  prosecutorial misconduct related to the alleged Brady violation.  As noted above, petitioner's trial

21  counsel explained at the evidentiary hearing in this matter that he would not have cross-examined

22  Andy Vang or Detective Kang about any assault charges brought against Vang in connection

23  with this incident, even if he had known about those charges, because he did not wish to

24  highlight the fact that the authorities had credited Vang's version of the events over petitioner's.

25  In light of his trial counsel's testimony in this regard, petitioner cannot show a reasonable

26  /////

17

1    probability that "the result of the trial would have been different if the suppressed documents had

2    been disclosed to the defense."  Strickler, 527 U.S. at 289.

3              Accordingly, for the reasons set forth above, petitioner is not entitled to federal

4    habeas relief on his claim of prosecutorial misconduct based on a Brady violation.

5        B.  Ineffective Assistance of Counsel

6              Petitioner also raises numerous claims of ineffective assistance of trial counsel.

7    After setting forth the applicable legal principles, the court will evaluate these claims in turn

8    below.

9            1.  Applicable Legal Principles

10             The Sixth Amendment guarantees the effective assistance of counsel.  The United

11   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

12   Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

13   counsel, a petitioner must first show that, considering all the circumstances, counsel's

14   performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a

15   petitioner identifies the acts or omissions that are alleged not to have been the result of

16   reasonable professional judgment, the court must determine whether, in light of all the

17   circumstances, the identified acts or omissions were outside the wide range of professionally

18   competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

19   petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

20   466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

21   counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

22   694.  A reasonable probability is "a probability sufficient to undermine confidence in the

23   outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

24   (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

25   deficient before examining the prejudice suffered by the defendant as a result of the alleged

26   deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

18

1  sufficient prejudice . . . that course should be followed." <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955

2  (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).  In assessing an ineffective assistance of

3  counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide

4  range of professional assistance.'" <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (quoting

5  <u>Strickland</u>, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised

6  acceptable professional judgment in all significant decisions made." <u>Hughes v. Borg</u>, 898 F.2d

7  695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

8          2. <u>Conflict of Interest</u>

9              a. <u>Background</u>

10         Petitioner claims that his trial counsel was operating under a conflict of interest

11  because counsel had previously represented Andy Vang "and his firm acted as counsel on

12  charges directly related to this case." (Doc. No. 1 at 4.)  Petitioner argues that this conflict

13  resulted in "the obvious lackluster cross-examination of the alleged victim/former client of trial

14  counsel." (<u>Id.</u>)  He also argues that, absent this conflict of interest, his trial counsel would have

15  investigated Vang's criminal background and discovered that Vang had been arrested for and

16  charged with assault with a firearm upon petitioner in connection with this very case.  (<u>Id.</u> at 9.)

17  Moreover, petitioner asserts that his trial counsel's former law firm was aware that Vang had

18  been charged with assault because Vang was then a client of that firm.  (<u>Id.</u> at 10.)  Petitioner

19  claims that, because of the conflict arising from his trial counsel's previous and possibly ongoing

20  representation of and involvement with Vang, counsel failed to question Vang about the charges

21  brought against him for assaulting petitioner with a deadly weapon.  (<u>Id.</u>)  In essence, petitioner

22  claims that his trial counsel's prior representation of and involvement with Vang, both personally

23  and as a former member of the law firm representing Vang, constituted a conflict of interest

24  which adversely affected counsel's representation of petitioner by limiting counsel's

25  impeachment of Vang and counsel's investigation into Vang's arrest and possible conviction on

26  charges related to petitioner's prosecution.

As described above, petitioner raised his claim of ineffective assistance of trial counsel in his petition for writ of habeas corpus filed in the Sacramento County Superior Court. That court rejected petitioner's arguments in this regard, reasoning as follows:

> Claims that could have been raised on appeal are not normally cognizable on habeas corpus. (In re Dixon (1953) 41 Cal.2d 756, 759; Harris, supra, 5 Cal.4th at 828.)

> Petitioner claims that he had a conflict of interest with trial counsel that denied him effective representation. The issue of a potential conflict was raised on the record. In particular, trial counsel disclosed that he worked for the Miller Law Group as of counsel and the Miller Law Group represented a witness, Andy Vang. Counsel stated that he never substantively represented Vang. He further disclosed that Vang's mother attempted to pay counsel, but that he directed his staff to refuse the payment and refer her to the Miller Law Group. The trial court found that there was no conflict and if there was one, that Petitioner had waived the conflict on the record. (See attached transcripts.) Therefore, any claim regarding this conflict, which was discussed on the record, is barred by Dixon.

> Petitioner now claims that trial counsel lied to the trial court when discussing the potential conflict of interest. According to the transcripts, trial counsel represented to the court that he had previously conveyed to Petitioner the information about working for the Miller Law Group, which had represented Vang. He also stated that Petitioner signed "something" that stated that counsel explained the issue to Petitioner. In fact, Petitioner now claims those two representations were false. Even if counsel's statements were false, Petitioner has not shown that a conflict actually existed. At a minimum, the facts were disclosed on the record and the trial court found that no conflict existed, based in part on the fact that counsel never made any substantive appearances on Vang's behalf. Petitioner also waived any conflict *on the record*. Similarly Petitioner claims that he was unaware that Vang's mother tried to pay trial counsel, but that information was also disclosed on the record. Finally, Petitioner claims that counsel maintained a relationship with Vang's family through closing arguments. He refers to a page in the transcript that states: "Andy has three brothers and sisters back in my office." Petitioner has not shown that the family's presence resulted in or reflected any improper conduct by counsel. The reason behind Vang's family's presence at counsel's office is unknown. Petitioner assumes or speculates that it is nefarious, but it is equally likely to be innocent. Since it is Petitioner's obligation to show that he is entitled to relief, the claim is without merit.

(Resp't's Lod. Doc. 8 at "Page 3 of 6.")

The state trial court record reflects that the following exchange between the court and petitioner's counsel occurred during petitioner's trial regarding the possible conflict of interest resulting from counsel's involvement with or prior representation of victim/witness Vang:

> THE COURT:  . . . Briefly, Counsel, you discussed with me, and I just wanted to put it on the record, the conflict of interest, which is not truly a legal conflict of interest, but if you'd explain those circumstances just so that we can get it out and on the record.

> MR. ROSENFELD:  Thank you, your Honor.

> Your Honor, I have explained to Mr. Lor in the past that one of the complaining witnesses in this case, Mr. Andy Vang, was a long-time returning client of the Miller Law Group.  I explained to Mr. Lor that I used to work with the Miller Law Group as of counsel, not for the Miller Law Group.  I was never an employee of the Miller Law Group.

> I was an employee of the Miller Law Group for a period of time, left the office, went to work for Rothschild, Wishek and Sands, went back to the Miller Law Group as of counsel, but during my time of as of [sic] counsel was when I first met Mr. Andy Vang.

> I never controlled his file.  I was never privy to any conversations. I made appearances on behalf of Mr. Russ Miller, just standing in for him on various court appearances for Mr. Andy Vang.

> I told that to Mr. Lor because if there is an appearance of the possible impropriety of conflict, but none exists.  But I felt it was necessary that Mr. Lor have the information.

> THE COURT:  He's previously, as I understand it –

> And the appearances you made were continuances.  They weren't substantive matters like prelims or other things; is that correct?

> MR. ROSENFELD:  No, your Honor.  I never made a substantive appearance that I can recall on behalf of Mr. Vang.

> THE COURT:  You've informed me that you've explained this to Mr. Lor, and he's signed a written waiver of conflict?

> MR. ROSENFELD:  It was about a year ago, your Honor, that I did explain it to him and had him sign something stating that I explained it to him.

/////

21

1   I also want to further state that I have talked to Mr. Russ Miller,
just in case my recollection was faulty, just to make sure with him,
2   because he is the counsel for Mr. Vang, that I never did anything
substantive, and Mr. Miller, after reviewing his notes and his file,

3
told me I never did anything substantive, just made appearances for
4   him.

5   THE COURT:  Mr. Lor, I just want to make it clear you're aware
of this; is that correct?

6
THE DEFENDANT (through the interpreter):  Yeah.  Yes.
7
THE COURT:  Do you waive --
8
Do you still wish to have Mr. Rosenfeld as your attorney?
9
THE DEFENDANT (through the interpreter):  Yes.
10
THE COURT:  And do you waive any possible legal conflict there
11   may have been as a result of his working for the same law firm that
represented the alleged victim?

12
THE DEFENDANT (through the interpreter):  Yes.
13
THE COURT:  All right.  The other thing is, counsel also told me
14   that the mother of the victim just recently attempted to pay your
firm --

15
To make it clear for the record, you no longer work with Russ
16   Miller Group, you're on your own, separate private firm; is that
correct?

17
MR. ROSENFELD:  Yes, your Honor.  For the last year and a half
18   I have had my own practice.

19   THE COURT:  All right.  And then out of the blue, the mother of
the alleged victim came to pay you money, presumably based on
20   that prior representation by the Russ Miller Group; is that correct?

21   MR. ROSENFELD:  Yes, your Honor.

22   THE COURT:  And as you have explained it to both the
prosecution and I, because of your concerns about the appearances,
23   as well as any legal conflicts, appearances of impropriety and legal
conflicts, you instructed your staff not to accept the money and
24   directed the mother to go to the Russ Miller Group; is that correct?

25   MR. ROSENFELD:  Yes, your Honor.

26   /////

22

1   THE COURT:  All right.  As I understand it, you were not
    personally present; your secretary called you with the question as to
2   what should I do, this woman wants to pay us money, we don't
    represent her or the son.

3

4   MR. ROSENFELD:  That's correct, your Honor.

5   THE COURT:  And so you explained to them, your staff, what to
    do, to just direct the woman down the street.

6   MR. ROSENFELD:  Yes, your Honor.

7   THE COURT:  All right.  Having that in mind, Mr. Lor, do you
    still wish to have Mr. Rosenfeld represent you in this case?

8

9   THE DEFENDANT (through the interpreter):  Yes.

10  THE COURT:  All right.  I'm satisfied there's no conflicts, legal
    conflict, and if there is one, that the defendant, Mr. Lor, has waived
11  any conflict and it's appropriate for counsel to continue
    representing him in this case.

12  (Reporter's Transcript (RT) at 3-7.)

13          Petitioner now claims that "trial counsel and his firm" represented Andy Vang on

14  the assault and weapons charges stemming directly from the instant case, but that petitioner's

15  counsel did not advise the trial court of this at the time of the above-described colloquy regarding

16  the potential conflict.  (Doc. No. 1 at 9-10, 18.)  Petitioner also contends that his trial counsel

17  failed to impeach Vang with his arrest and possible conviction on a charge of assault upon

18  petitioner with a deadly weapon in connection with this case, even though the Miller Law Group

19  almost certainly was in possession of all relevant information in this regard.  (Id. at 10.)

20          Petitioner has attached and incorporated his habeas petition filed in the California

21  Supreme Court to his federal habeas petition.  In that state habeas petition, petitioner claimed that

22  he did not understand the ramifications of his waiver of conflict-free counsel which was obtained

23  by the trial court.  (Id. at 16.)  He noted that he required a Hmong interpreter at all court hearings,

24  and states that he "never had the relevant facts, nor their true implications, sufficiently explained

25  to him."  (Id.)  Petitioner stated that his trial counsel "lied' when he told the trial court he had

26  previously informed petitioner of a potential conflict and obtained a written waiver of that

23

1   conflict from petitioner.  (Id. at 16-17.)  Petitioner noted, in this regard, that there is no evidence

2   in the record of any such written waiver.  Petitioner also questions why the victim's mother

3   would have attempted to retain or pay petitioner's trial counsel instead of the Miller Law Group

4   if counsel's connection with the victim was as minimal as he represented it to be to the trial

5   court.  (Id. at 17.)  Petitioner speculates that his trial counsel may have had a more substantial

6   involvement in the prior representation of Vang.  (Id.)  In this regard, petitioner asks:

7           Why would the mother of the alleged victim track down Mr.
            Rosenfeld, at his own new practice, to pay him money, supposedly
8           owed, for mere appearances made more than a year and a half
            before?  Why did she specifically come to Mr. Rosenfeld, with that
9           money, instead of taking it to the "Miller Law Group?"

10  (Id.)  Petitioner also directs the court attention to his trial counsel's closing argument, wherein he

11  stated, "I had to spend some time because the binder I brought had five hundred pages in it, and

12  Andy has three brothers and sisters back in my office."  (Id. at 18-19; RT at 1006.)  Petitioner

13  questions why the siblings of his alleged victim were "in [trial counsel's] office during closing

14  argument."  (Id. at 18-19.)

15          Petitioner also questions why his defense counsel did not follow up more closely

16  on Vang's admitted conviction for shooting into an occupied dwelling a year after the events at

17  issue at petitioner's trial.  (Id. at 22.)  He questions whether there was "a negotiated plea and

18  leniency provided [in that case] contingent upon Vang's cooperation and testimony in

19  petitioner's case?"  (Id.)  Further, he notes that during cross-examination of Vang, his trial

20  counsel elicited testimony that Vang had a conviction for "firing a gun."  (RT at 160.)  However,

21  petitioner explains, his trial counsel did not ask any further questions about that prior conviction,

22  nor did he ask Vang whether he was charged with any crimes in connection with the incident

23  from which the charges against petitioner stemmed.  Petitioner argues that these obvious

24  omissions during the cross-examination of Vang were the result of his trial counsel's conflict of

25  interest.  In summary, petitioner claims that if the defense was aware of the facts surrounding the

26  charges brought against Vang, his trial counsel rendered ineffective assistance in failing to cross-

24

1   examine Vang and Det. Kang about those facts.  Petitioner also contends that his trial counsel's

2   previous relationship with Vang constituted a conflict of interest which prevented him from

3   effectively cross-examining Vang and Det. Kang.  He also argues that his waiver of the conflict

4   in the trial court was not knowing and voluntary and that his trial counsel's representations in

5   open court that petitioner had been informed of the conflict and waived it in writing were false.

6          In the May 7, 2012 order setting an evidentiary hearing, this court found that the

7   Sacramento County Superior Court's decision addressing this claim was contrary to clearly

8   established federal law and was also based on an unreasonable determination of the facts.  (Doc.

9   No. 71 at 31-35.)  Accordingly, this federal habeas court will now evaluate the claim de novo.

10  Frantz, 533 F.3d at 735.

11              b.  Applicable Legal Principles

12          It is well established that the right to effective assistance of counsel carries with it

13  "a correlative right to representation that is free from conflicts of interest."  Wood v. Georgia,

14  450 U.S. 261, 271 (1981).  See also Campbell v. Rice, 302 F.3d 892, 897 (9th Cir. 2002).

15  Conflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on

16  behalf of, a client are threatened by his responsibilities to another client or a third person or by

17  his own interests.  See generally ABA, Model Rules Prof. Conduct, Rule 1.7 and commentary

18  (1983).  Conflicts may occur in various factual settings.  For example, conflicts may arise in

19  circumstances in which one attorney represents more than one defendant in the same proceeding.

20  See, e.g., Holloway v. Arkansas, 435 U.S. 475, 481-91 (1978).  Conflicts may also arise in

21  situations in which an attorney represents a defendant in a criminal matter and currently has or

22  formerly had an attorney-client relationship with a person who is a witness in that matter.  See,

23  e.g., Houston v. Schomig, 533 F.3d 1076, 1-81 (9th Cir. 2008); Thomas v. Municipal Court, 878

24  F. 2d 285 (9th Cir. 1989).  The rule prohibiting counsel from representing conflicting interests

25  serves to protect confidential information obtained during the course of an earlier representation,

26  ensure undivided attorney loyalty, and guard against infringement of the right to cross-

1   examination.  See Sanders v. Ratelle, 21 F.3d 1446, 1452-53 (9th Cir. 1994);  Fitzpatrick v.

2   McCormick, 869 F.2d 1247, 1251 (9th Cir. 1989); United States v. Allen, 831 F.2d 1487, 1497

3   (9th Cir. 1987); Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980).  Courts "generally presume

4   that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client."

5   Burger v. Kemp, 483 U.S. 776, 784 (1987).

6           In order to establish an ineffective assistance of counsel claim based on a conflict

7   of interest, a petitioner must show that an actual conflict of interest adversely affected his

8   lawyer's performance.  Mickens v. Taylor, 535 U.S. 162, 174 (2002); Cuyler v. Sullivan, 446

9   U.S. 335, 348-350 (1980); Lewis v. Mayle, 391 F.3d 989, 997 (9th Cir. 2004); Mannhalt v Reed,

10  847 F.2d 576, 582 (9th Cir. 1988) (adverse effects found where a conflict "may have impacted

11  the manner of the cross-examination" by the attorney).  The existence of an actual conflict

12  "cannot be governed solely by the perceptions of the attorney; rather, the court itself must

13  examine the record to discern whether the attorney's behavior seems to have been influenced by

14  the suggested conflict."  Sanders, 21 F.3d at 1452.  The mere possibility that an attorney had a

15  conflict of interest is insufficient to entitle a petitioner to habeas relief.  Rather, the petitioner

16  must show that:  (1) his attorney actively represented conflicting interests, and (2) the conflict

17  "actually affected" the adequacy of the attorney's representation.  Cuyler, 446 U.S. at 349-50.

18  See also Campbell, 302 F.3d at 897; Lockhart, 250 F.3d at 1229.  However, a defendant "need

19  not demonstrate prejudice in order to obtain relief."  Cuyler, at 349-50.  See also Delgado v.

20  Lewis, 223 F.3d 976, 981 (9th Cir. 2000).  Nonetheless, a defendant must show that "the

21  attorney's behavior seems to have been influenced" by the conflict."  Lockhart, 250 F.3d at 1231

22  (quoting Sanders, 21 F.3d at 1452).

23          A defendant may "waive his right to the assistance of an attorney unhindered by a

24  conflict of interests."  Holloway, 435 U.S. at 483 n.5.  "A valid waiver of conflict of interest

25  must be voluntary, knowing, and intelligent, such that the defendant is sufficiently informed of

26  the consequences of his choice."  Lewis, 391 F.3d at 996.  See also Garcia v. Bunnell, 33 F.3d

                                                26

1   1193, 1195 (9th Cir. 1994) ("Even if counsel is subject to an actual conflict of interest, however,

2   the trial court may generally allow the attorney to proceed if the defendant makes a voluntary,

3   knowing, and intelligent waiver."); Allen, 831 F.2d at 1494 ("[o]f course, a defendant may waive

4   his right to the assistance of an attorney who is unhindered by conflicts . . . provided the waiver is

5   given knowingly and intelligently.")  Whether there is a proper waiver is to be determined by the

6   trial court and any such waiver should appear on the record.  Johnson v. Zerbst, 304 U.S. 458,

7   464-65 (1938).  Resolution of the issue of waiver depends "upon the particular facts and

8   circumstances surrounding that case, including the background, experience, and conduct of the

9   accused."  Id.  See also Edwards v. Arizona, 451 U.S. 477, 482 (1981).  Moreover, a court must

10  "indulge every reasonable presumption against the waiver of fundamental rights."  Lewis, 391

11  F.3d at 997 (citations omitted.)

12                          c.  Analysis

13          At the January 29, 2013 evidentiary hearing, petitioner's trial counsel testified that

14  he was not associated with the Miller Law Group at the time of petitioner's trial but that he had

15  previously made "stand-in appearances" on behalf of the Miller Law Group's client Andy Vang

16  while acting as "of-counsel" to that firm.  (Transcript at 5.)  In this regard, he explained that at

17  least one year prior to petitioner's trial, he made one or two such "stand-in" appearances on

18  Vang's behalf.  (Id.)  He testified that he did not engage in discussions with Vang about his case

19  at that time.  (Id.)

20          Petitioner's trial counsel also testified that he was not "personally" in contact with

21  Vang's family at the time of petitioner's trial, but that on one occasion Vang's mother mistakenly

22  came to his office to make a payment to the Miller Law Group.  (Id.)  Counsel explained that he

23  and the Miller Law Group were located in the same building at the time the Miller Law Group

24  was representing Andy Vang.  (Id. at 32.)  Counsel theorized that Vang's mother came to his

25  office in the mistaken belief that the Miller Law Group had moved into his office.  (Id. at 5-6.)

26  By that time, however, the Miller Law Group had moved into an office building less than a block

away.  (Id. at 31-32.)  Trial counsel testified that his staff directed Vang's mother to the correct

office.  (Id. at 6, 31-32.)  Counsel also explained that Vang's mother did not speak English and

that there were "language issues."  (Id. at 5.)  Counsel further testified that, while he did not have

any personal contact with Vang's family, his investigator had contacted them to follow up on

information that "Mr. Vang had told his family members that he had shot first."  (Id.)

Petitioner's trial counsel also testified at the evidentiary hearing that he told

petitioner he had associated with the Miller Law Group as "of counsel" in the past, that the

Miller Law Group had represented Andy Vang in another case, and that he had made courtesy

appearances on behalf of Vang.  (Id. at 8, 9.)  Counsel testified that he did not believe he had a

conflict of interest as a result of these circumstances, but that in an abundance of caution he

informed petitioner and the trial court of the facts surrounding his prior contacts with Andy

Vang.  (Id. at 9, 10-11.)  He explained during his testimony that he "knew that this was

something that Mr. Lor should explore with the Court and that I should tell the Court, and I did,

and prior to proceeding to trial, the Court extensively went through the issue with Mr. Lor and

myself to make sure that there was no conflict, and I felt that that was sufficient, and so did the

Court."  (Id. at 10-11.)  Counsel also testified that petitioner signed a written waiver of any

conflict.  (Id. at 10, 17.)[7]

Upon further questioning at the evidentiary hearing, petitioner's trial counsel

stated that he had no desire to protect Vang at the time of petitioner's trial, and that his "duty and

. . . representation went straight to Yong Lor."  (Id. at 13, 17.)  He explained that he had no

relationship with Vang other than "simple counsel standing in for other counsel and continuing

the matter."  (Id.)  He also stated that he did not receive any confidential information from Vang

that he had a duty to keep secret.  (Id. at 37.)  In this regard, he explained:

/////

---

[7]  It should be noted that petitioner's trial counsel could not explain why that waiver was
not contained in the state court file.  (Id. at 17.)

1             I've been licensed a long time, and I would have never had
          confidential information that I would have jeopardized my client,
2             my career, I – there's no confidential information I ever had. I
          simply made stand-in appearances, and as an abundance of caution
3             brought it to the attention of Mr. Lor and the Court.

4   (Id. at 37-38.)

5          Trial counsel was unable to explain the statements he made during his closing

6   argument as reflected in the trial transcript to the effect that Andy Vang's brothers and sisters

7   were waiting in his office. (Id. at 14, 15.) However, he speculated that his investigator might

8   have arranged to meet with them in his office at that time in order to continue her investigation of

9   Vang's statements to them that he fired the first shot. (Id. at 14-15, 18.) Petitioner's trial counsel

10   explained that his investigator was continuing her investigation into this area even at the time of

11   his closing argument. (Id. at 19.) Counsel denied that he was representing the Vang family in

12   any way at that time. (Id. at 15.)

13          After a review of the record, this court concludes that petitioner has failed to

14   demonstrate his trial counsel was operating under a conflict of interest when he represented

15   petitioner in this case. Trial counsel testified at the evidentiary hearing that he only made "stand-

16   in" appearances for Andy Vang as a favor to the Miller Law Group, that he did not discuss

17   Vang's case with him at that time, that he was never Vang's retained counsel, and that he did not

18   obtain any confidential information from Vang that he would be obligated to protect during his

19   later representation of petitioner. Further, there is no evidence in the record that any conflict of

20   interest adversely affected counsel's performance on petitioner's behalf. Counsel testified at the

21   evidentiary hearing that he refrained from questioning the trial witnesses at petitioner's trial

22   about any charges brought against Vang in connection with this case because he did not want to

23   highlight the fact that the authorities had ultimately credited Andy Vang's version of the events

24   over petitioner's version. There is no evidence before this court that trial counsel's decision in

25   this regard was based on his need to protect Vang. Put another way, there is no evidence in the

26   record before this federal habeas court that a conflict caused petitioner's trial counsel to "pull his

punches" when questioning Andy Vang or Officer Kang.  Petitioner has failed to demonstrate

that his attorney actively represented conflicting interests or that any conflict actually affected the

adequacy of counsel's representation.[8]  Accordingly, petitioner is not entitled to federal habeas

relief on this claim of ineffective assistance of counsel.[9]

### 3.  Failure to File a Motion to Suppress

Petitioner also claims that his trial counsel rendered ineffective assistance in

failing to "challenge the legality of the police impounding, searching, and seizing evidence from

petitioner's vehicle in this case."  (Doc. No. 1 at 24.)  Petitioner directs the court's attention to

the trial testimony of police officer Henry Luckie, who located and impounded petitioner's car.

(Id. at 25; RT at 327-36.)  Petitioner argues that Officer Luckie did not have the proper authority

to impound the vehicle.  (Doc. No. 1 at 25.)  He contends that his trial counsel's cross-

examination of Officer Luckie was inadequate in that it "contains not one single question

pertaining to the legality of the impound, search, and seizure of evidence."  (Id.)  Petitioner

argues that counsel "failed to subject this crucial aspect of the prosecution's case to the crucible

of legally sufficient adversarial testing."  (Id.)

Petitioner also complains that his trial counsel failed to challenge Officer Luckie's

testimony that he did not touch or remove the tape on the door of petitioner's vehicle, but simply

assumed there were bullet holes under the tape.  (Id.)  Petitioner claims that Officer Luckie's

---

[8]  In light of this conclusion, this court will not address petitioner's argument that his waiver of a conflict was insufficient.

[9]  To the extent petitioner is claiming his trial counsel rendered ineffective assistance in failing to cross-examine Andy Vang and Detective Kang about the assault charge brought against Vang, apart from any conflict of interest, his claim lacks merit and should be rejected. Petitioner's trial counsel testified that he would have refrained from such cross-examination because he decided, for tactical reasons, not to highlight the fact that the charges against Vang were dismissed while the charges against petitioner were allowed to proceed.  Counsel's decision in this regard is not unreasonable.  Reasonable tactical decisions, including decisions with regard to the presentation of the case, are "virtually unchallengeable."  Strickland, 466 U.S. at 690. Accordingly, petitioner is not entitled to federal habeas relief on any such claim of ineffective assistance of counsel.

testimony in this regard conflicted with the preliminary hearing testimony of Officer Winston

Gin that bullet holes on the car door were visible.  Petitioner argues this indicates that the tape

was removed by Officer Luckie.  (Id.)  He asks, "how did Officer Gin 'actually see bullet holes' .

. . in the vehicle being 'detained by Officer Luckie' if the tape wasn't removed from the door?"

(Id.)  Petitioner argues that his trial counsel "had a fundamental duty to challenge the legality of

police doing anything at all to petitioner's vehicle which was legally parked in the carport space

assigned to his parent's apartment."  (Id.)  Petitioner questions whether the "preliminary

information" was falsified, and why "is there not one single mention of a warrant by the police,

prosecutor, or [trial counsel]?"  (Id.)

        Petitioner argues that his trial counsel's failure to challenge the seizure and search

of his vehicle was not harmless because the evidence found in the vehicle formed the basis for

damaging trial testimony against petitioner.  (Id. at 26.)  He contends that evidence obtained from

his vehicle "was, and led to, what constituted the very heart of the prosecution's case."  (Id.)

        The Sacramento County Superior Court rejected petitioner's arguments in this

regard, reasoning as follows:

> Petitioner argues that trial counsel should have moved to suppress
> evidence regarding the seizure of Petitioner's vehicle.  However,
> he has not shown what grounds existed for suppressing the
> evidence.  He generally claims that the law enforcement officers
> could not have seen the bullet holes without first removing the tape
> from the vehicle, but he does not explain why they did not have the
> authority to impound the vehicle.  Petitioner has not shown that
> had trial counsel moved to suppress the evidence that it is likely
> that the motion would have been successful and that the evidence
> would have been suppressed.  Therefore, he has not shown that
> counsel's failure was prejudicial to Petitioner's case.

(Resp't's Lod. Doc. 8 at "Page 4 of 6.").

        "To show prejudice under Strickland resulting from the failure to file a motion, a

defendant must show that (1) had his counsel filed the motion, it is reasonable that the trial court

would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that

there would have been an outcome more favorable to him."  Wilson v. Henry, 185 F.3d 986, 990

(9th Cir. 1999) (citing Kimmelman, 477 U.S. at 373-74) (so stating with respect to failure to file a motion to suppress on Fourth Amendment grounds)).  See also Ceja v. Stewart, 97 F.3d 1246, 1253 (9th Cir. 1996) (Trial counsel is not ineffective in failing to file a suppression motion "which would have been 'meritless on the facts and the law[.]'"); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994) (failure to file suppression motion is not ineffective assistance where counsel investigated filing the motion and there was no reasonable possibility that the evidence would have been suppressed); United States v. Molina, 934 F.2d 1440, 1447 (9th Cir. 1991) (Counsel did not render ineffective assistance by failing to file a motion to suppress that was "clearly lacking in merit[.]").

The Sacramento County Superior Court's conclusion that petitioner had failed to show prejudice stemming from his trial counsel's failure to file a motion to suppress, or to more vigorously cross-examine trial witnesses about the seizure of petitioner's vehicle, is not unreasonable and should not be set aside.  Petitioner's conclusory allegations and rhetorical questions fail to demonstrate that a more vigorous cross-examination would have uncovered any grounds upon which to challenge the search and seizure of his vehicle, or that a motion to suppress evidence would have been granted.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  Petitioner has failed to support this ineffective assistance of counsel claim with sufficient facts or argument.  Accordingly, he is not entitled to federal habeas relief.

4. Delay in Prosecution

Petitioner's next claim is that the first of his two trial counsel rendered ineffective assistance in failing to object to the 34-month delay in bringing his case to trial.  (Doc. No. 1 at 27.)  Petitioner argues that his counsel's multiple waivers of petitioner's Sixth Amendment right to a speedy trial were improper.  (Id.)  Petitioner states that, due to his ignorance of the law and

/////

limited English skills, he was "forced" to trust his trial attorney to make appropriate decisions in

this regard.  (Id.)

> The Sacramento County Superior Court rejected this claim, reasoning as follows:

> Petitioner alleges that trial in his criminal case was improperly
> delayed by 34 months.  The crime occurred on July 18, 2001.
> According to the petition, Petitioner was arrested in Wisconsin.
> He was arraigned on February 13, 2002, was held to answer on
> July 9, 2002 and his trial commenced on October 25, 2004.  The
> record reflects numerous time waivers.  Although Petitioner claims
> that he relied exclusively on trial counsel's advice and decisions to
> waive time, he has not shown that such advice was improper.  Nor
> has he shown that had he asserted his right to a speedy trial that the
> outcome of his case would have been any different.

(Resp't's Lod. Doc. 8 at "Page 4 of 6.").

Before this court petitioner has failed to demonstrate that his trial counsel's

waivers of his right to a speedy trial were improper or in any way "outside the wide range of

professional assistance."  Kimmelman, 477 U.S. at 381.  Put another way, petitioner has failed to

rebut the "strong presumption" that counsel's decision to delay the trial was not the product of

"acceptable professional judgment."  Hughes, 898 F.2d at 702.  Petitioner has also failed to

demonstrate any reason to believe that the outcome of his case would have been different had his

counsel insisted on going to trial earlier.  This court also notes that a client is bound by the

decisions of his counsel on scheduling matters, such as a delay in the trial.  New York v. Hill,

528 U.S. 110, 115, 117 (2000) ("scheduling matters are plainly among those for which agreement

by counsel generally controls").  This is so because "the lawyer has – and must have – full

authority to manage the conduct of the trial."  Id. (quoting Taylor v. Illinois, 484 U.S. 400, 417-

18 (1988).

The decision of the Sacramento County Superior Court that petitioner failed to

show either deficient performance or prejudice with respect to this aspect of his ineffective

assistance of counsel claim is not contrary to or an unreasonable application of federal law.

Accordingly, petitioner is also not entitled to federal habeas relief with respect to this claim.

5. <u>Prosecution Witnesses/Possession of Work Product</u>

Petitioner claims that his first trial counsel rendered ineffective assistance because a law clerk and an investigator employed by defense counsel eventually testified for the prosecution at his trial.  (Doc. No. 1 at 27.)  Without any elaboration with respect to this claim, petitioner argues that the simple fact these two persons testified at trial in the prosecution's case was "unfair."  (<u>Id.</u> at 28.)

Petitioner also notes that, at some point during his trial, the trial judge remarked that petitioner's second trial counsel was "a little bit at odds" because he did not receive a complete file from petitioner's original trial counsel.  (<u>Id.</u> at 27.)  Petitioner observes that the trial judge further stated that "the prosecution is in possession of some expert reports . . . that defense counsel did not have and did not possess, and it was a report done at the behest of . . . the former defense attorney."  (<u>Id.</u>)  Petitioner argues that the prosecution had "no legal right" to "confidential, defense 'work product.'"  (<u>Id.</u>)  He contends that it was "unfair" for the prosecutor to "**<u>somehow</u>**, acquir[e] defense materials generated by the first attorney which were **<u>NOT</u>** turned over to the second defense attorney."  (<u>Id.</u> at 28.)  Petitioner states that the prosecution would only be entitled to this material if the discovery rules permitted it.  He argues that the prosecutor's actions in obtaining the defense expert reports that were generated by his original attorney may have "circumvented" his right to counsel.  (<u>Id.</u>)  Petitioner also notes that his second trial counsel complained to the trial court about "the grave disadvantage that I am at with another attorney handing over information and files and statements that would never have been done by myself after my analysis and review of the case."  (<u>Id.</u> at 28; RT at 685.)  Petitioner argues that this "set of circumstances" resulted in his receiving ineffective assistance of counsel. (Doc. No. 1 at 28.)

The Sacramento County Superior Court rejected these arguments, reasoning as follows:

/////

34

1
2
3
4

> Petitioner complains that members of the defense team, including a law clerk and an investigator, were eventually called as witnesses for the prosecution. Petitioner asserts that this alone constitutes unfairness. However, he does not identify any particular fact or act by counsel that was ineffective. Nor has he shown that there was any violation of attorney-client or work product privileges. Therefore, he has not stated grounds for relief.

5  (Resp't's Loc. Doc. 8 at "Page 4 of 6.")

6       As with the immediately preceding claims addressed above, petitioner has failed

7  to substantiate these claims of ineffective assistance of trial counsel with any facts or argument.

8  Specifically, petitioner has failed to show that the trial testimony of the original defense

9  attorney's law clerk and investigator prejudiced his trial in any way, or that his trial counsel could

10  or should have prevented this testimony from being introduced at trial.[10]  Petitioner has also

11  failed to explain the exact nature of the "work product" that the prosecutor allegedly improperly

12  possessed, or why he suffered any prejudice from the prosecutor's receipt of this material.

13  Because petitioner's arguments are unsupported by any specific factual allegations and he has

14  failed to establish prejudice, he is not entitled to federal habeas relief on this claim.

15       6. Corroborating Evidence

16       Petitioner's next claim is that his trial counsel rendered ineffective assistance in

17  failing to call petitioner's wife and sister to testify at his trial. (Doc. No. 1 at 29.) Petitioner

18  states that these witnesses would have verified his version of the events; specifically, that he was

19  with his daughter during the altercation and that they had visited his sister prior to being attacked

20  by Vang. (Id.) Petitioner also argues that his trial counsel rendered ineffective assistance in

21  failing to obtain a photocopy of the "sign in log" at his daughter's preschool, to show that he

22  picked her up that afternoon. (Id.) Petitioner argues that this evidence "points to the

23  /////

24

25  [10]  This court has reviewed the trial testimony of the original defense counsel's law clerk and investigator in question. (RT at 863-80.)  The substance of their testimony regarding their
26  brief interviews of petitioner's step-daughter regarding the events in question does not appear to have been prejudicial to petitioner's defense.

implausibility of petitioner going to start trouble, in enemy gang territory, in broad daylight, and alone except for his four year old daughter."  (Id.)

> The California Court of Appeal rejected these arguments, reasoning as follows:
>
> A petition alleging ineffective of counsel based on the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had. (People v. Geddes (1991) 1 Cal. App.4th 448, 454.)
>
> Trial counsel apparently did not call Petitioner's family to support his contention that he was in the area where the crime occurred for the purpose of picking up his daughter from school.  Petitioner states that there was also supporting evidence in the form of a sign-in log at his daughter's school.  He does not attach the evidence to the petition.  Therefore, he has not shown that any such evidence existed for trial counsel to present.

(Resp't's Lod. Doc. 8 at Pages 4-5 of 6.)

> Petitioner has failed to adequately allege or establish either deficient performance or prejudice with respect to this aspect of his ineffective assistance of counsel claim.  Petitioner's conclusory allegations that calling his wife and sister as witnesses at his trial, or obtaining the sign in log from his daughter's school, would have resulted in a different verdict in his case are clearly insufficient for this purpose.  See Jones, 66 F.3d at 205 ("conclusory suggestions" and "bald assertions" fall short of stating an ineffective assistance of counsel claim and do not entitle the petitioner to an evidentiary hearing).  Nor has petitioner established that his wife and sister would have given testimony favorable to his defense if called.  See Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (petitioner failed to establish prejudice where he did "nothing more than speculate that, if interviewed," the witness would have given helpful information); Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculating as to what expert witness would say is not enough to establish prejudice); Dows v. Wood, 211 F.3d 480, 486-87 (2000) (no ineffective assistance of counsel for failure to call witnesses where petitioner did not identify an actual witness, provide evidence that the witness would testify, or present an affidavit from the alleged witness); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (same); United States v. Harden,

846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify).  Without any evidence that specific witnesses would have testified in a manner that might have led to a different result at his trial, petitioner's bare allegations are insufficient to support his claims in this regard.

In sum, this claim by petitioner of ineffective assistance of counsel is conclusory, lacks support, and fails to demonstrate that petitioner suffered prejudice as a result of the performance of his trial counsel.  The decision of the state courts rejecting these claims is not contrary to or an unreasonable application of <u>Strickland</u>.  Accordingly, petitioner is not entitled to federal habeas relief.

### 7.  Failure to Subpoena Probation Records

Petitioner also argues that his trial counsel rendered ineffective assistance in failing to subpoena his probation records or call his probation officer as a witness at trial.  (Doc. No. 1 at 29-30.)  Petitioner argues that his probation records would have verified his good behavior on probation and his intent to withdraw from gang activity.  (<u>Id.</u>)

The Sacramento County Superior Court rejected this claim, reasoning as follows:

> Petitioner claims that his probation officer would have testified, if called, to various facts relating to Petitioner's desire to stop participating in gang activity.  First, Petitioner has not attached any evidence showing how the probation officer would have testified.  Second, Petitioner testified on his own behalf and could and may have testified about his gang activity or lack thereof.  Finally, as the gang enhancements were stricken, he has failed to show any prejudice.

(Resp't's Lod. Doc. 8 at "Page 5 of 6.").

This court agrees with the Superior Court that petitioner has failed to demonstrate prejudice with respect to this claim.  Aside from the fact that the California Court of Appeal struck the gang enhancement findings, petitioner's unsupported speculation as to how his probation officer would have testified at trial or what his probation records would have

37

1  demonstrated if presented at trial is clearly insufficient to establish prejudice.  In addition, there

2  is no evidence before this court that petitioner's counsel did not contact petitioner's probation

3  officer and simply concluded that his testimony, or the probation records, would not have been

4  beneficial to the defense.  In short, petitioner has failed to substantiate this claim with facts or

5  evidence.  Accordingly, he is not entitled to federal habeas relief.

6                            8.  Cross-Examination

7                Petitioner also claims that his trial counsel failed to "protect [him] from cross-

8  examination that clearly went beyond the scope of the direct testimony."  (Doc. No. 1 at 30.)  He

9  argues that his counsel allowed the prosecution to "make the defendant their own witness."  (Id.)

10  Petitioner states that examples from the record to support this claim are "too numerous to list,"

11  but he notes that while his direct-examination covered only 11 1/3 pages of trial transcript, the

12  prosecutor's cross-examination of him went on for 55 pages.  (Id.)  Petitioner also argues in

13  conclusory fashion that his trial counsel's short cross-examination of the prosecution witnesses

14  was "pathetic."  (Id.)  Petitioner speculates as to the possible reasons for his trial counsel's

15  inadequate cross-examination, but fails to provide any concrete examples from the trial

16  transcript.

17                The Sacramento County Superior Court denied relief with respect to this claim,

18  stating as follows:

19                Petitioner contends that trial counsel failed to "protect" him from
                  cross-examination beyond the scope of direct examination.  He
20                provides no evidence supporting his claim, stating merely that they
                  are too numerous to list and identifying the fact that cross-
21                examination constituted 55 pages of testimony compared to 11 ½
                  pages of direct examination.  General claims cannot be evaluated
22                on habeas corpus.

23  (Resp't's Lod. Doc. 8 at "Page 5 of 6.").

24                As with the ineffective assistance claims discussed above, petitioner has failed to

25  support his conclusory statements in support of this aspect of his claim with specific allegations

26  /////

1  or proof.  Accordingly, he has failed to establish either deficient performance or prejudice and

2  fails to show entitlement to federal habeas relief on this claim.

3      C.  Failure to Bifurcate Trial of Gang Enhancement Allegations

4          Petitioner claims that the trial court violated his right to due process when it

5  denied his motion to bifurcate the trial of the gang enhancement allegations from the trial on the

6  underlying charges.  (Doc. No. 1 at 5, 35.)  Petitioner also argues that, as an alternative to

7  bifurcation, the trial court should have stricken the gang enhancement allegations and all related

8  trial testimony.[11]  (Id. at 35.)

9          Petitioner contends that Detective Kang's testimony was factually inconsistent

10 and confusing with regard to the particulars of the alleged prior gang activities of petitioner's

11 gang.  (Id. at 37-38.)  Petitioner compares Det. Kang's preliminary hearing testimony to his

12 testimony at trial in an attempt to demonstrate that Kang's trial testimony was inaccurate with

13 regard to the predicate offenses, and that the prosecution did not properly substantiate those

14 offenses.  (Id. at 37-39.)  Petitioner argues that this court's assessment of the prejudice resulting

15 from the trial court's failure to bifurcate the gang allegations from the trial on the underlying

16 charges should take into account:  "the Wisconsin evidence; the length of Detective Kang's

17 testimony before the jury; the proven lack of foundation for the gang evidence; the trial court's

18 failure to even take a look at the preliminary hearing evidence proffered by the prosecution;

19 Detective Kang's proven incompetence and unreliability, factual inconsistencies; dishonesty, and

20 that, ultimately, it was the prosecution's 'offer of proof', not actual proof that unfairly decided

21 this issue at trial level."  (Id. at 41.)  Petitioner also argues that, in light of the problems with the

22 evidence supporting the gang enhancement allegations, there was a significant possibility of juror

23 confusion.  (Id. at 41-42.)

24

25 _____

26      [11]  Under California law, a defendant is required to file a motion to sever in order to
    request separate trials of substantive counts, while enhancements are subject to a motion to
    bifurcate.  People v. Burnell, 132 Cal. App.4th 938, 946 & n. 5 (2005).

1        Respondent failed to address these claims in the answer filed in this action.

2        The last reasoned decision addressing this claim is the decision of the California

3    Court of Appeal.  That court rejected petitioner's contentions in this regard, reasoning as follows:

4        Defendant argues the trial court abused its discretion in refusing to
         bifurcate the gang enhancement allegations from the trial of the
5        underlying crimes.  We disagree.

6        Before trial, defendant moved to bifurcate the gang enhancement
         allegations, to which the People filed an opposition.  The trial court
7        denied the motion because the gang allegations were probative on
         the issues of defendant's motive and intent.  The court also
8        concluded that the prejudicial impact of the evidence was minimal
         because the evidence also was being admitted in connection with
9        the underlying offenses.

10       In People v. Hernandez (2004) 33 Cal.4th 1040, 1046, 1051, our
         Supreme Court determined that the trial court did not abuse its
11       discretion in denying defendant's motion to bifurcate the gang
         enhancement charges from the underlying charges of robbery.  The
12       court noted that a trial court has the discretion to bifurcate certain
         issues such as prior convictions from the determination of the
13       defendant's guilt of the charged offense.  (Id. at p. 1048.)  The
         Hernandez court, however, distinguished the prior conviction –
14       which relates to the defendant's status and is often not connected to
         the instant crime – from the criminal street gang enhancement
15       allegations – which is, by definition, inextricably linked to the
         defendant's crime.  (Ibid.)  On this latter point, the Hernandez
16       court explained:  "Evidence of the defendant's gang affiliation –
         including evidence of the gang's territory, membership, signs,
17       symbols, beliefs and practices, criminal enterprises, rivalries, and
         the like – can help prove identity, motive, modus operandi, specific
18       intent, means of applying force or fear, or other issues pertinent to
         guilt of the charged crime."  (Id. at p. 1049.)  Bifurcation is thus
19       warranted only when the other evidence of the predicate acts
         required to establish the gang enhancement is unduly prejudicial,
20       or when gang evidence about the defendant is "so extraordinarily
         prejudicial, and of so little relevance to guilt, that it threatens to
21       sway the jury to convict regardless of the defendant's actual guilt."
         (Ibid.)
22
         Drawing from cases discussing the standard for severance of
23       charged offenses, the Hernandez court stated, "when the evidence
         sought to be severed relates to a charged offense, the 'burden is on
24       the party seeking severance to clearly establish that there is a
         substantial danger of prejudice requiring that the charges be
25       separately tried.  [Citations.]  When the offenses are joined for trial
         the defendant's guilt of all the offenses is at issue and the problem
26       of confusing the jury with collateral matters does not arise.  The

                                      40

other-crimes evidence does not relate to [an] offense for which the
defendant may have escaped punishment.  That the evidence would
otherwise be inadmissible may be considered as a factor suggesting
possible prejudice, but countervailing considerations that are not
present when evidence of uncharged offenses is offered must be
weighed in ruling on a severance motion.  The burden is on the
defendant therefore to persuade the court that these countervailing
considerations are outweighed by a substantial danger of undue
prejudice."  (People v. Hernandez, supra, 33 Cal.4th at p. 1050.)
We review the trial court's decision under the deferential abuse of
discretion standard of review.  (Id. at pp. 1050-1051.)

Here, we detect no abuse of discretion by the trial court in denying
the motion for bifurcation.  Defendant's connection to his gang
was relevant to his identity as the shooter and the motive for the
crime, since HNS and MOD were engaged in a "war" at the time of
the shooting.  The gang evidence helped explain an otherwise
random exchange of gunfire.  It also helped explain why defendant,
undertaking a dangerous venture into hostile territory, would pick a
fight with an unaccompanied young teenage opponent, who was
possibly unarmed and probably inexperienced.  The evidence that
T.V., upon meeting a fellow gang member at the market, turned
around and taunted defendant with a gang gesture, lent support to
defendant's claim that he did not fire the first shots, a defense
buttressed by defendant's testimony that he was no longer a gang
member and that he was simply driving his stepdaughter to his
sister's residence on the day T.V. shot at him.  The gang evidence
put the event in perspective, and decreased the risk to all parties
that the jurors would speculate about extraneous matters having
little or no connection to the facts of the case.  Under these
circumstances, the gang evidence admitted about defendant was
relevant to his guilt and not unduly prejudicial.

In addition, the evidence of the other predicate crimes was so brief
and short of details that its inflammatory potential was never
kindled.  The chances of jury confusion were also minimal, since
the evidence was offered to prove the charged gang enhancements,
which were distinct from the substantive offenses.  Finally,
defendant's lack of involvement with the predicate crimes negated
any possibility that the jury could believe that defendant should be
punished for those acts.  The court did not abuse its discretion by
denying the motion to bifurcate.

(2007 WL 1874424, at **5-6.)

         The United States Supreme Court has not determined that a criminal defendant

has a federal constitutional right to bifurcation.  See Spencer v. Texas, 385 U.S. 554, 565-66

(1967) ("Two-part jury trials are rare in our jurisprudence; they have never been compelled by

41

1   this Court as a matter of constitutional law, or even as a matter of federal procedure."); Marshall

2   v. Lonberger, 459 U.S. 422, 438 n.6 (1983) (reaffirming Spencer).  Therefore, a court may grant

3   habeas relief based on a state court's decision to deny a motion for severance only if the joint

4   trial was so prejudicial that it denied a petitioner his right to a fair trial.  Zafiro v. United States,

5   506 U.S. 534, 538-39 (1993) (court must decide if "there is a serious risk that a joint trial would

6   compromise a specific trial right of one of the defendants, or prevent the jury from making a

7   reliable judgment about guilt or innocence"); Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th

8   Cir. 1991) ("The simultaneous trial of more than one offense must actually render petitioner's

9   state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28

10  U.S.C. § 2254 would be appropriate.") (internal quotation marks and citation omitted).

11          Petitioner bears the burden of proving that he is entitled to federal habeas relief,

12  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2003), and must establish that prejudice arising

13  from the failure to grant a severance was so "clear, manifest, and undue" that he was denied a fair

14  trial.  Lambright v. Stewart, 191 F.3d 1181, 1185 (9th Cir. 1999) (quoting United States v.

15  Throckmorton, 87 F.3d 1069, 1071-72 (9th Cir. 1996)).  "In evaluating prejudice, the [federal

16  habeas court] focuses particularly on cross-admissibility of evidence and the danger of 'spillover'

17  from one charge to another, especially where one charge or set of charges is weaker than

18  another."  Davis, 384 F.3d at 638.  Undue prejudice also exists "whenever joinder of counts

19  allows evidence of other crimes to be introduced in a trial where the evidence would otherwise

20  be inadmissible."  Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000).

21          On habeas review, federal courts neither depend on the state law governing

22  severance, Grisby, 130 F.3d at 370 (citing Hollins v. Dep't of Corrections, State of Iowa, 969

23  F.2d 606, 608 (8th Cir. 1992)), nor consider procedural rights to a severance given to criminal

24  defendants in the federal criminal justice system.  Id.  Rather, the relevant question is whether the

25  /////

26  /////

1   state proceedings satisfied due process.  Id.; see also Cooper v. McGrath, 314 F. Supp. 2d 967,

2   983 (N.D. Cal. 2004).[12]

3                As the California Court of Appeal correctly observed, in this case the gang

4   evidence was admissible to show petitioner's intent and motive on the underlying crimes.  This

5   fact reduced the possibility of prejudice.  See Comer v. Schriro, 480 F.3d 960, 985 (9th Cir.

6   2007) (cross-admissibility of evidence significantly reduces potential prejudice).  As described by

7   the trial court,

8              As to the enhancement itself I don't see that it prejudices the
               defense.  The words spoken, gang challenges, and other things are
9              already going to be before the jury because they are part of the
               operative facts, and the fact that there is an enhancement is not
10             going to – once that evidence comes in, is not going to cause any
               further damage than already would have occurred in the sense that
11             the jury will have learned that the defendant is involved in gangs."

12             As to the enhancement itself, it's an entirely appropriate charge.
               It's part and parcel of the evidence and the testimony of the expert
13             witnesses commonly heard in any number of gang cases
               throughout the States, in California, and it's appropriate that this
14             jury try it all in the unity of a trial rather than bifurcate a trial. . . ."

15                                         * * *

16
               The point being the evidence in and of itself to the underlying
17             crime is totally a gang initiated attempt [sic] murder.  Two separate
               counts of the gang enhancement just simply brings in further
18             evidence to support that it was done for the purpose and benefit of
               promoting the HNS street gang.
19

20   (RT at 27-28.)

21                As noted by the state appellate court, the gang evidence in this case also served to

22   explain an otherwise inexplicable series of events and it "put the event in perspective."  See

23   United States v. Takahashi, 205 F.3d 1161, 1164 (9th Cir. 2000) (gang evidence admissible when

24

25        ───────────────────────
          [12] Of course, to the extent petitioner is arguing that the trial court abused its discretion
26   under state law in denying his request for bifurcation, his claim is not cognizable in these federal
     habeas proceedings.  Estelle, 502 U.S. at 67-68.

                                          43

1 relevant to a material issue).  Further, the fact that petitioner did not have any involvement with

2 the predicate crimes lessened any potential prejudice resulting from the admission of the gang

3 evidence.  In denying petitioner's request for bifurcation, the trial court noted that the predicate

4 offenses were not offenses in which petitioner was "linked," and that they were "the classic kind

5 of predicate offenses that are used in gang crimes to support the theory that this is a criminal

6 street gang."  (Id. at 29-30.)  Under the circumstances of this case, petitioner has not established

7 that the state trial court's refusal to bifurcate the trial of the gang allegations from the underlying

8 charges rendered his trial fundamentally unfair.  Davis, 384 F.3d at 638.  Thus, federal habeas

9 relief is not warranted on this claim.[13]  See Cisneros v. Harrington, Nos. CV 10-574-DMG (OP)

10 & CV 09-6716 DMG (OP), 2012 WL 3150610, at *14-15 (C.D. Cal. Jan 31, 2012) (rejecting

11 similar claim to federal habeas relief).

12       D.  Constitutionality of AEDPA

13         Petitioner claims that "as it is being applied in this case, and throughout

14 California, the AEDPA, violates the UNITED STATES CONSTITUTION."  (Doc. No. 1 at 5.)

15 /////

16

17     [13]  Petitioner also claims that his trial counsel rendered ineffective assistance in failing to
do more to persuade the trial court to bifurcate the gang enhancements from the trial on the

18 underlying charges.  (Doc. No. 1 at 31-34.)  Petitioner claims that the prejudice from the
admission of this gang evidence "was not adequately demonstrated by [trial counsel]."  (Id. at

19 31.)  Specifically, petitioner argues that trial counsel should have "attacked the prosecution's
credibility sufficiently;" cross-examined Andy Vang on the assault charge brought against him in

20 connection with this case; filed a motion to strike the trial testimony of Detective Kang on the
grounds that his testimony failed to support the gang enhancement allegation and was unreliable;

21 filed a motion to strike testimony about petitioner's alleged criminal conduct in Wisconsin
because it was relevant only to the gang enhancement allegation which was later stricken by the

22 California Court of Appeal; filed a motion to strike the gang enhancement allegation on the basis
that it was not supported by sufficient evidence; and "ma[de] motions for mistrial, dismissal of

23 the gang enhancement allegation, exclusion of the Wisconsin evidence and/or the striking of all
the gang enhancement evidence."  (Id. at 31-34.)  However, petitioner has failed to demonstrate

24 that his trial counsel's performance in connection with the gang evidence was not based on
reasonable tactical decisions or was otherwise outside the "wide range of professional

25 assistance."  Kimmelman, 477 U.S. at 381.  Moreover, he has failed to demonstrate that the result
of the proceedings would have been different had his trial counsel performed the actions now

26 suggested by petitioner.  Accordingly, he is not entitled to federal habeas relief with respect to
such claims.

1    Petitioner does not elaborate on this claim further in either his petition or traverse.  Respondent

2    has failed to address the claim in the answer filed in this action.

3              To the extent petitioner is attempting to raise a free-standing claim challenging the

4    constitutionality of the AEDPA, his claim appears to be unexhausted and lacks merit in any

5    event.  Petitioner has failed to demonstrate that the AEDPA violates the federal constitution on

6    its face or as applied in this case.  See Crater v. Galaza, 491 F.3d 1119 (9th Cir. 2007).

7    Petitioner's vague and conclusory allegation that AEDPA violates the federal constitution is

8    insufficient to demonstrate that he is entitled to federal habeas relief.  Jones, 66 F.3d at 204;

9    James, 24 F.3d at 26.

10                                    CONCLUSION

11             Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that

12   petitioner's application for a writ of habeas corpus be denied.

13             These findings and recommendations are submitted to the United States District

14   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

15   one days after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18   shall be served and filed within fourteen days after service of the objections.  Failure to file

19   objections within the specified time may waive the right to appeal the District Court's order.

20   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

21   1991).  In his objections petitioner may address whether a certificate of appealability should issue

22   in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules

23   /////

24   /////

25   /////

26   /////

Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: May 16, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
lor2985.hc

46